[Civil No. 4141.   Filed April 1, 1940.]

[100 Pac. (2d) 979.]

CHARLOTTE POUQUETTE, a Widow, Appellant, v. MARY P. O'BRIEN, a Widow, and MARICOPA COUNTY, a Political Subdivision of the State of Arizona, Appellees.

Mr. E. R. Byers, Mr. Urban R. Miller and Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Mr. Frank H. Lyman and Mr. Samuel C. Jefferies, for Appellee O'Brien.

LOCKWOOD, J.—This is an appeal by Charlotte Pouquette, hereinafter called plaintiff, from an order entered on March 23, 1939, by the superior court of Maricopa county, on application of Mary P. O'Brien,

hereinafter called defendant, continuing until March 4, 1941, by virtue of the provisions of the mortgage moratorium act of 1937, as amended by chapter 34, regular session laws of the fourteenth legislature, the proceedings in a mortgage foreclosure action brought by plaintiff against defendant, and from certain clarifying amendments to the order of continuance.

The factual situation may be stated as follows: On October 4, 1930, defendant executed her promissory note in the sum of $5,299, in favor of plaintiff, and secured the same by a realty mortgage on certain lands, the subject matter of the present foreclosure action. On March 4, 1933, the eleventh legislature, in its regular session, enacted chapter 29, commonly known as the mortgage moratorium act. The title of this act and its first section read as follows:

"An Act Declaring the Existence of an Emergency, and Providing Procedure in Actions and Foreclosure of Real Estate Mortgages.

"Be It Enacted by the Legislature of the State of Arizona:

"Section 1. There is hereby declared to be in the state of Arizona an emergency involving the social, economic and financial welfare of the state as a whole."

The act then provided that all actions for foreclosure of realty mortgages, either pending or thereafter commenced, which had been executed prior to the passage of the act, might be continued by the court for a period of not longer than two years from the date the act became effective, and for certain special rules applying to other similar foreclosure actions in which default had been entered but no judgment signed. On February 15, 1935, the twelfth legislature, by chapter 9 of its regular session, amended chapter 29, *supra,* to permit further continuances for a period not longer than March 4, 1937, but expressly provided that both chapter 29 and the amending chapter should be deemed

repeated automatically as of March 4, 1937. On February 16, 1937, the thirteenth legislature, by chapter 8 of its regular session, again amended chapter 29, *supra,* by permitting extensions to March 4, 1939, and certain other provisions were made regarding the conditions of the extensions. On June 26, 1937, the same legislature, at its second special session, expressly repealed all of the above referred to laws, and enacted a new law, being chapter 17. The title of this new law and its first and second sections read as follows:

"An Act Relating to Mortgages; and Repealing Chapter 29, Session Laws of 1933, Regular Session, Chapter 9, Session Laws of 1935, and Chapter 8, Session Laws of 1937, Regular Session.

"Be it Enacted by the Legislature of the State of Arizona:

"Section 1. Short Title. This act shall be known and may be cited as the mortgage moratorium act of 1937.

"Sec. 2. Actions for Foreclosure. In all actions now pending or hereafter commenced, for the foreclosure of real estate mortgages or on notes secured thereby executed prior to March 4, 1933, the court, upon application of either the plaintiff or the defendant in such action, provided said defendant is not in default for want of pleading, and unless upon hearing of said application good cause is shown to the contrary, may order such cause continued for a period not longer than March 4, 1939."

The remainder of the act merely provided for the conditions upon which the continuance should be made, and the repeal of the previous laws, and carried the usual emergency clause, taking it from under the referendum provisions of the state Constitution.

It will be noted that this act omitted from its title and body the declaration of a social, financial and economic emergency in the state of Arizona requiring legislation of this nature which is found in the act of 1933.

In 1939, the fourteenth legislature, by chapter 34 of its regular session, amended chapter 17, *supra,* extending the time during which continuances might be granted to March 4, 1941.

On October 1, 1938, the note above referred to being long overdue and the interest thereon greatly in arrears, plaintiff commenced her action to recover judgment on the note, and to foreclose the mortgage. Defendant answered with certain dilatory motions and pleas, and applied to the court for a continuance until March 4, 1939, under chapter 17, *supra.* The case was continued upon this application. Various other proceedings not material to the issues of this case were had from time to time, and on March 7, 1939, defendant filed her application for a further continuance until March 4, 1941, under the provisions of chapter 34, *supra,* which had just been adopted. On March 18, 1939, plaintiff answered the petition for continuance, setting up that the mortgage act of 1937, as amended in 1939, was unconstitutional; that defendant was not entitled to any further continuance, and that the granting of a continuance would constitute an abuse of discretion by the court. The question came on for argument, and it was strenuously insisted that the act of 1937 was unconstitutional. The court overruled that contention, but allowed plaintiff to make a showing that even under the act defendant was not entitled to a continuance for various reasons which were set forth in plaintiff's answer to the motion for continuance. After hearing, the court overruled the objections and continued the foreclosure proceedings until March 4, 1941, upon certain conditions, and it is from the order of continuance that this appeal was taken.

There are some twenty-seven assignments of error, but we think the case can and should be decided upon the issue of whether the mortgage moratorium act of 1937 is unconstitutional, for there can be no question,

if that be true, that defendant was not entitled to a two-year continuance of a hearing of the action.

It is claimed by plaintiff that the act in question violates section 10 of article I of the federal Constitution, which reads so far as material as follows:

"No State shall . . . pass any . . . Law impairing the Obligation of Contracts, . . . "

and section 25 of article II of the Constitution of Arizona, which reads so far as material as follows:

"No . . . law impairing the obligation of a contract, shall ever be enacted."

■ We shall consider, in this opinion, only the question of whether the act violates the provisions of the federal Constitution quoted, for if it does it is immaterial what we think as to how it is affected by the Arizona one. Necessarily in determining this issue, any decisions of the federal Supreme Court in point are binding upon us, regardless of our individual or collective opinion as to the reasoning involved therein, or the conclusions reached by that august tribunal.

Both parties have cited us to the case of *Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398, 54 Sup. Ct. 231, 240, 78 L. Ed. 413, 88 A. L. R. 1481, as declaring the law upon the question. This famous case involved a mortgage foreclosure action commenced in the state of Minnesota. Chapter 339 of the Laws of 1933 of that state, though its language is very different, raised the identical constitutional question which we have under consideration. Like chapter 29, *supra,* it sets forth, though in much more voluminous terms, the existence of a social, economic and financial emergency involving not only the state of Minnesota but the entire United States. Like chapter 29 it authorizes the courts of Minnesota, in substance, to withhold from mortgage creditors any practical means of enforcing their mortgages during a period of time

which could not be justified except by the terms of the act, and like our laws it imposes certain conditions for the exercise of this power, which at best gave the mortgage creditor only a preservation of the *status quo*. In that case, as in this, the objection was raised that it violated the provisions of the federal Constitution in regard to impairing of the obligation of contracts. The Minnesota Supreme Court, by a divided opinion, upheld the law and the matter was taken to the Supreme Court of the United States for a final determination. That court, by a four to five decision, also upheld the validity of the act, and we must assume that if chapter 29, *supra,* had come before it for consideration, it would also have upheld its constitutionality and for the same reasons. This is admitted, in substance by plaintiff, but she contends that the reasoning and conclusions of the Supreme Court of the United States in the Blaisdell case are such that were the Arizona act of 1937, or any similar act from another state, to come before it now it would be compelled, by such reasoning and conclusions, to hold the later acts unconstitutional. We must, therefore, analyze that opinion and determine, if possible, just what it decided and how that decision is applicable to chapter 17, *supra.*

The case is a long one and quotations therefrom sufficient to fully explain and substantiate our conclusions as to its meaning would extend this opinion to unreasonable length. After a careful analysis of the case and its reasoning, we think it clearly laid down the following principles: (a) Legislation of the kind involved in the various mortgage moratorium acts under consideration unquestionably violates section 10, article I of the federal Constitution referred to. (b) There is implied, though not expressed, within the federal Constitution a reservation of the police power to the states, which is superior to all

specific provisions of that Constitution and which may be called into play in periods of great public emergency, and when so called these police powers may *temporarily only* suspend the exercise of the specific powers or prohibitions of the Constitution. As was stated in the Blaisdell case:

"Undoubtedly, whatever is reserved of state power must be consistent with the fair intent of the constitutional limitation of that power. The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other. This principle precludes a construction which would permit the state to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. But it does not follow that conditions may not arise in which a *temporary* restraint of enforcement may be consistent with the spirit and purpose of the constitutional provision and thus be found to be within the range of the reserved power of the state to protect the vital interests of the community. It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and *temporary* interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood, or earthquake. See *American Land Co.* v. *Zeiss,* 219 U. S. 47, 31 Sup. Ct. 200, 55 L. Ed. 82. The reservation of state power appropriate to such extraordinary conditions may be deemed to be as much a part of all contracts, as is the reservation of state power to protect the public interest in the other situations to which we have referred. And, if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood, or earthquake, that power cannot be said to be nonexistent when the urgent public need demanding such relief is produced by other and economic causes." (Italics ours.)

(c) The existence of a public emergency justifying the suspension of the ordinary constitutional limita-

tions is primarily for the legislature, but the determination of that branch of the government is not conclusive, and whether a law depending upon the existence of an emergency ceases to operate because the emergency had ceased is always open to judicial inquiry, notwithstanding the legislative declaration. Again and again through the opinion the court emphasizes the fact in varying language that in order to justify legislation like the mortgage moratorium acts there must exist a grave public emergency in the opinion of both the legislative and judicial branches of the government, and that when, in the opinion of the latter, the emergency which justifies the act has passed, of necessity the moratorium ceases to be effective, or, as it may be more emphatically put, becomes unconstitutional so far as future use is concerned.

Our legislature, like that of Minnesota, in 1933 declared so grave an emergency existed that it justified the calling into effect of the reserved police power of the state. In 1937 it repealed the previous law upon the subject and enacted a new one which omitted any declaration of an emergency such as was found in the original act. We think this action of the legislature is significant. The very same reasoning which caused the Supreme Court of the United States to take judicial notice of the existence of the actual emergency in the nation in 1933 requires us to take judicial notice of its present condition.

Plaintiff argues (a) that the economic and social condition of the United States has been practically restored to the condition which existed before the emergency which called forth the act of 1933 arose, and (b) if such prior condition has not been fully restored and the nation is still in the throes of the depression which began in 1929, that such depression having existed steadily for at least eight years, with

no apparent sign of a change, can no longer be called an emergency but must be considered as a definite status, unpleasant as it may be for us to admit it.

A similar question has arisen in several states lately, and in each case, so far as we are aware, the courts of the states involved have held that the emergency which justified the original moratorium acts has passed, and that re-enactment of them was, therefore, following the reasoning of the Blaisdell case, unconstitutional. The Supreme Court of Iowa, in *First Trust Joint Stock Land Bank* v. *Arp,* 225 Iowa 1331, 283 N. W. 441, 442, 120 A. L. R. 932, passed on this question in language so apt that we quote therefrom:

"In 1933, at the birth of the first Moratorium Act, the State, as well as the nation, was confronted with a great emergency: Banks were closed; home owners and farm owners were being ousted from their homes and farms through foreclosure proceedings; farm strikes existed; open, defiant and militant resistance to courts and court orders and decrees was in evidence; labor was unemployed; there was scarcely any price or market for farm products; and the health and social welfare of the people, as well as the sovereignty and perpetuity of organized government, was seriously menaced and in the balance. In the presence of such conditions it is fair to conclude, as did the Legislature of this State, that a great temporary emergency existed, and that the exercise of the reserve police power was necessary to prevent a collapse of our constitutional government. Under such existing conditions the Chief Executive of the State declared the existence of a great emergency and asked the Legislature to provide a remedy. The Legislature in providing a remedy and enacting the so-called Moratorium Act also declared that an emergency existed, and this court took judicial notice of the conditions existing and sustained that Act of the Legislature.

. . . . . . . . .

"Emergency in order to justify the intervention of the reserve police power must be temporary or it cannot be said to be an emergency. If a so-called emer-

gency exists beyond a temporary period then it is no longer an emergency but a status and can furnish no basis or authority for legislative action in contravention of or inconsistent with the provisions of the State and Federal constitutions. The existence of an emergency is necessarily a fact question. While declaration of the executive and pronouncements of the Legislature are entitled to great weight and should be carefully considered, yet, the fact question still exists, and this can be determined by record facts, history of current events, and common knowledge and information. In other words, a court, in determining the existence of an emergency, may and should take judicial notice of conditions existing at the time the emergency or its continued existence is questioned.

"It must be conceded, as we held in the Nordholm Case, *supra* [*Des Moines Joint Stock Land Bank* v. *Nordholm*, 217 Iowa 1319, 253 N. W. 701], that an emergency existed in 1933, sufficient to sustain the Act of the Legislature in enacting the so-called Moratorium Act, but it cannot be said that by reason of such conditions moratorium acts could be re-enacted covering a period of six years, as has been the case in this State. In the instant case the record shows, without controversy, that practically all of the depressed conditions existing in 1933, do not exist at this time. And the court can and does take judicial notice of such fact. Farm values have been bettered; the price of farm produce has increased; the banking situation has been made stable and secure, and no orgy of bank failures and receiverships longer exists, thousands of Iowa farm homes that were under foreclosure proceedings have been refinanced through the government and other agencies.

"The Supreme Court of the United States has in the 'lease cases' and the cases involving the extension of the Emergency Housing Act, recognized and announced this rule of judicial notice as to the existence or continuance of an emergency sufficiently serious and acute to sustain a legislative enactment based wholly upon the exercise of the police power.

"And where the question is only whether this statute is in force today, upon the present record and the facts we judicially know, we are compelled to

say that the law has ceased to operate, and restating the principle that moratorium legislation is not valid and cannot be sustained unless based upon an existing emergency, we must hold that no emergency now exists, and that it did not exist at the time of the enactment of Senate File 15, and that the trial court erred in sustaining the act and in granting the continuance in this case.''

*First Trust Co. of Lincoln* v. *Smith,* 134 Neb. 84, 277 N. W. 762; *Strehlow* v. *Krings,* 134 Neb. 82, 277 N. W. 784; *Metropolitan L. Ins. Co.* v. *McDonald,* 225 Iowa 1075, 283 N. W. 445.

While it is true that the Supreme Court of Mississippi, in the case of *Atlantic L. Ins. Co.* v. *Klotz,* 182 Miss. 243, 181 So. 519, declined to hold expressly that reenacted mortgage moratorium legislation was unconstitutional, it used language in its opinion which indicated that if it had been seriously urged upon it that an emergency justifying such an act no longer existed, it would have been inclined to hold there was no constitutional warrant for its further continuance.

Defendant has cited to us a number of cases which she contends hold to the contrary, but upon an examination of these cases it appears that the question discussed herein was neither specifically raised nor decided. *New York L. Ins. Co.* v. *Slentz,* 145 Kan. 849, 67 Pac. (2d) 522; *Bennett* v. *California Trust Co.,* 6 Cal. (2d) 381, 57 Pac. (2d) 914; *Makar* v. *Peoples Wayne County Bank,* 284 Mich. 489, 280 N. W. 31; *Union Trust Co.* v. *Kaplan,* 249 App. Div. 280, 292 N. Y. Supp. 152; *Jordan* v. *Crichton,* 191 La. 920, 186 So. 612; *State* v. *Waterfield,* 167 Okl. 209, 29 Pac. (2d) 24; *Union Trust Co.* v. *Eggers,* 58 Ohio App. 233, 16 N. E. (2d) 543; *Honeyman* v. *Clark,* 278 N. Y. 467, 17 N. E. (2d) 131.

Defendant also claims that even though the state and national emergency may have passed, the facts in this particular case show that it has not de-

parted so far as she is concerned, and urges that the law should, therefore, be held constitutional as to her. We think it needs no argument to show that the emergency referred to by the Supreme Court of the United States was not intended to cover the exigencies of an individual and specific case.

■ It is also contended that because plaintiff accepted the benefit of some of the conditions attached to the order of continuance, she is, therefore, estopped from appealing from such order. While it is ordinarily true that one who accepts the benefits of a judgment may not question its validity by appeal, there are exceptions, and we think the facts bring this appeal within such exceptions. *Frankel* v. *Frankel,* 41 Ariz. 396, 18 Pac. (2d) 911; *Cashion* v. *Bank of Arizona,* 30 Ariz. 172, 245 Pac. 360.

While there are other matters raised by the brief, we think what we have already said makes it unnecessary for us to discuss them in this opinion.

■■ For the reason that the legislature has failed to declare the existence of any emergency, social, economic or financial, in the act of 1937 sufficient to justify the setting aside of section 10, article I, *supra,* and that we take judicial notice that no such emergency then existed in 1937, nor now exists, we are of the opinion that the mortgage moratorium acts of 1937 and 1939 are unconstitutional as being in conflict with section 10, article I, of the federal Constitution.

The order of continuance appealed from is reversed and the case remanded with instructions to the trial court to take such action as may seem proper under the law applicable to cases of this nature.

ROSS, C. J., and McALISTER, J., concur.