Henry A. Kaelin, Plaintiff, *v.* Emil Michelson and "Mary" Michelson, His Wife, First Name "Mary" Fictitious, Being Unknown to Plaintiff, Defendants.

Supreme Court, Special Term, Queens County, March 26, 1941.

*Paul E. McGoldrick*, for the plaintiff.

*Abraham Apat*, for the defendants.

Hooley, J.   Motion to dismiss the complaint, under rule 106 of the Rules of Civil Practice, on the ground that it does not state facts sufficient to constitute a cause of action.

The action is one to foreclose a second mortgage, dated April 9, 1932, payable in quarterly installments of seventy-five dollars on account of principal, together with interest.   The defendants defaulted in the payment of the installment of principal due April 9, 1933, and subsequent installments of principal, and further defaulted in the payment of the balance of principal which became due on April 9, 1935.   Interest and taxes have been paid to date, and hence the only claimed default is in the payment of the . principal·

The section of the Civil Practice Act involved herein is section 1077-a, which was enacted in 1933 as a part of the moratorium statutes, and which provided that no mortgage on real property could be foreclosed solely because of a default in the payment of principal or installments of principal, so long as there were no other defaults in connection with the mortgage.

The complaint contains the usual allegations in connection with the foreclosure of a mortgage and then sets forth the enactment

of chapter 793 of the Laws of 1933 and recites the extensions thereof from year to year up until and including chapter 566 of the Laws of 1940. The economic and financial conditions existing at the time of the enactment of the original moratorium law (Laws of 1933, chap. 793 aforesaid) are recited, and then the following allegations are set forth:

" *Twenty-third.* At the time of the enactment of Chapter 566 of the Laws of 1940, the conditions set forth in section 1 of Chapter 793 of the Laws of 1933 no longer existed; had long prior thereto ceased to exist and do not now exist; the economic and financial processes had become normal; financial and commodity markets for all commodities, including real property, were open and active; banks generally throughout the whole country had been reopened and had remained open for six years or more and their depositors insured or otherwise protected against loss; that at the time of the enactment of Chapter 566 of the Laws of 1940 there was and for several years had been and still is an abundance of funds for investment in real property and on real property mortgages on fair and favorable terms; that interest rates for years had been lowered in a highly competitive investment market and were and are exceptionally low and attractive to the borrower; that bank deposits had for years been increasing and were and are exceptionally high; that enormous sums were annually being loaned on real estate secured by bond and mortgages, real property values had become stabilized and thousands of parcels were being bought, sold and mortgaged annually throughout the City of New York, the State and nation and more especially and more abundantly in the county of Queens in the City and State of New York.

" *Twenty-fourth.* That neither at the time of the passage of Chapter 566 of the Laws of 1940, nor at any time in the year 1940 nor for some time prior thereto did there exist, nor does there now exist, a serious public emergency, nor any public emergency affecting or threatening the welfare, comfort and safety of the people of the State resulting from any abnormal disruption in economic and financial processes, or any abnormal credit or currency, in the State or nation, nor in the abnormal deflation of real property values nor the curtailment of income by unemployment and /or other adverse conditions. That there was at the time of such enactment no necessity for legislative intervention by the enactment of the provisions therein nor in Section 1077 a-b-c-d-e-f or g of the Civil Practice Act, prescribed, and that chapter 566 of the Laws of 1940 were and are null and void for such reasons and for the reasons hereinafter alleged.

" *Twenty-fifth.* The serious public emergency set forth in said Section 1 of Chapter 793 of the Laws of 1933 no longer exists at the time of the enactment of Chapter 566 of the Laws of 1940, had not existed for several years, and does not now exist.

" *Twenty-sixth.* That by reasons hereinbefore stated, Chapter 566 of the Laws of 1940, reenacting and extending Section 1077-a of the Civil Practice Act is null and void and violates the provisions of Section 10 of Article 1 of the Constitution of the United States by impairing the obligations of the contract between the plaintiff and the defendant EMIL MICHELSON and also violates Section 1 of the Fourteenth Amendment of the Constitution of the United States by depriving the plaintiff of his property without due process of law and by denying to the plaintiff his rights and privileges to the equal protection of the law."

For the purposes of this motion the allegations in the complaint must be deemed to be true. This being the case, there would seem to be no doubt that if such allegations are proved upon a trial the plaintiff will have established that there was no emergency at the time of the enactment of the statute above referred to And it naturally follows that if the emergency that brought about the moratorium laws had ceased to exist, then the statute must be held to be unconstitutional, as will be hereafter pointed out.

There is no doubt that in periods of crisis and emergency the Legislature may exercise the police power, without violating the true intent of the Federal Constitution, to temporarily restrain the enforcement of contracts. (See *Block* v. *Hirsh*, 256 U. S. 135; *Marcus Brown Holding Co.* v. *Feldman*, Id. 170; *Levy Leasing Co.* v. *Siegel*, 258 id. 242.) The latter two cases arose under the New York Emergency Rent Laws of 1920. And in *Home Building & Loan Assn* v. *Blaisdell* (290 U. S. 398), the mortgage moratorium statute of the State of Minnesota was sustained. The theory of that decision was that the economic crisis of 1933 justified a temporary suspension of the rights of mortgagees so long as there was an emergency, and upon the imposition of reasonable conditions. The court indicated that the legislation was temporary, and that the postponement of the period of redemption from a foreclosure sale was to May 1, 1935, and stated further (p. 447) " that [the] period may be reduced by the order of the court under the statute, in case of a change in circumstances, *and the operation of the statute itself could not validly outlast the emergency or be so extended as virtually to destroy the contracts.*"

The court further said in the latter case (p. 442): " While the declaration by the Legislature as to the existence of the emergency

was entitled to great respect, it was not conclusive; and, further, that a law 'depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases * * * even though valid when passed.' *It is always open to judicial inquiry whether the exigency still exists upon which the continued operation of the law depends.*" (Italics supplied.)

Our own Court of Appeals in cases sustaining the moratorium laws in this State has indicated that approval thereof could continue only so long as there was an emergency. (*Klinke* v. *Samuels,* 264 N. Y. 144; *City Bank Farmers Trust Co.* v. *Ardlea Corp.,* 267 id. 224· *Honeyman* v. *Hanan,* 275 id. 382.) In *Klinke* v. *Samuels* (*supra*) the court said in part (at p. 149): " To prevent worse and more extensive evils and suffering, the Legislature had asked through these laws, for security holders to wait *a reasonable time* for universal economic conditions to improve, provided interest and taxes are paid."

The court further said in that case (at p. 149): " That such legislation, *reasonably seeking only temporary relief,* is not unconstitutional, we may refer to our recent decision in *Matter of People* (*Title & Mortgage Guarantee Co. of Buffalo*) (264 N. Y. 69), and *Home Building & Loan Assn.* v. *Blaisdell* (290 U. S. 398)." (Italics supplied.)

It is apparent from the foregoing that the question as to whether an emergency existed at the time of the enactment of the statute here in question is for the courts to decide. (*Home Building & Loan Assn.* v. *Blaisdell, supra.*) Therefore, that question may be properly tested in this foreclosure action.

In this connection, it may be noted that moratorium statutes in other States somewhat similar to our statute have been declared unconstitutional on the ground that the emergency which existed in 1933 has passed. (*First Trust Joint Stock Land Bank of Chicago* v. *Arp,* 225 Iowa, 1331; 283 N. W. 441; *Jefferson Standard Life Ins. Co.* v. *Noble,* 185 Miss. 360; 188 So. 289; *Pouquette* v. *O'Brien,* 55 Ariz. 248; 100 P. [2d] 979; *First Trust Co. of Lincoln* v. *Smith,* 134 Neb. 84; 277 N. W. 762.)

The court does not decide whether or not the moratorium statute under discussion is unconstitutional. That matter is not now before the court. What the court does decide is that the complaint is sufficient in its allegations to state a cause of action. If the plaintiff upon the trial is able to prove to the satisfaction of the court that the emergency has passed, then the statute is unconstitutional, and the foreclosure action may proceed to judgment.

The motion to dismiss the complaint is denied.