[Civil No. 4602.   Filed November 15, 1943.]

[143 Pac. (2d) 341.]

N. P. COVERT, Appellant, v. LESLEY B. ALLEN, Appellee.

Mr. A. O. Johnson, for Appellant.

Mr. John A. Bruning, for Appellee; Mr. Lesley B. Allen, Appellee, in propria persona.

STANFORD, J.—This cause comes to us from Pima County, Arizona, where the case was tried before the Honorable Arthur T. La Prade, of Maricopa County, Arizona, without a jury. The appellant retained the appellee, who was a practicing lawyer, by written contract to represent her in the foreclosure of a realty mortgage securing a promissory note in the sum of $20,000 with interest, executed by Arizona Mortuary, a corporation, and assigned by the mortgagee and payee to this appellant. By the contract appellant agreed to pay appellee for his services $100 upon the execution of the contract, $100 upon the entering of an order of the continuance under the Moratorium Law or upon the issuance of a sheriff's certificate of sale, and 5% of any amount received in settlement of the action or 10% of the amount paid in redemption after sheriff's sale or the amount allowed by the court, less the $200 above referred to as advanced. Appellee filed his action for foreclosure July 11, 1933. In March, 1933, the Legislature of Arizona passed the Mortgage Moratorium Law, Laws 1933, chapter 29, whereby on proper application of a mortgagor continuance could be obtained through the court on certain conditions. In August, 1933, the Arizona Mortuary filed a motion for continuance under that law, and about each two years thereafter an application was made by the mortgagor for a continuance under the successive laws in that respect, the last continuance expiring March 4, 1941. However, on April 1, 1940, the Supreme Court of this State declared the Moratorium Act of 1939, Laws

1939, chapter 34, under which the last continuance was granted, unconstitutional. *Pouquette* v. *O'Brien,* 55 Ariz. 248, 100 Pac. (2d) 979. The mortgagor thereupon filed its answer and set-off, and the appellee, on behalf of his client, the appellant, filed a reply on December 22, 1941.

On the 23rd day of January, 1942, appellant notified appellee that she no longer required his services, and at a time thereafter the appellee brought his action against the appellant for legal services rendered in connection with the foreclosure action, and asked for $2,500, less $200 previously paid. Judgment was granted the appellee for the full amount prayed for in his action.

The assignments of error raised by appellant are:

First. That the court erred in the admission of evidence of services rendered by appellee short of complete performance of the contract.

Second. That appellee had been employed upon a contract for contingent fee and that the contingency upon which the fee was payable had not occurred, that the contract had not been performed, nor any adequate excuse shown for failure to perform, the court erred in overruling appellant's motion for judgment because the evidence showed that the appellant discharged her attorney for just cause.

Third. The court erred in rendering judgment for appellee in an amount greatly in excess of the reasonable value of services rendered.

The appellant submits two propositions of law:

First. An attorney, employed upon a contract for a contingent fee, discharged by his client for just cause before the happening of the contingency, cannot recover for services, either upon the contract or upon a *quantum meruit.*

Second. When an attorney is allowed to recover a fee upon a *quantum meruit* basis, the fee must

be reasonable, taking into account the importance of the services, the standing of the attorney in the profession and the degree of skill required for the services and the results obtained.

Among the contentions of the appellee are that he was always ready and willing to complete the case and carry out the contract as agreed, but did not have the cooperation of the appellant herein and that she declined to go to trial; that he offered to call experts in support of the value of his services, but the trial court ruled that they were not necessary to determine the issue; that he represented the appellee from June, 1933, to January, 1942, and that up to April, 1940, which was the earliest date the matter could be brought to issue because of the Moratorium Law, he could not bring the case to trial, and thereafter she would not come at his request and get ready for the trial.

Appellant cites in support of her contentions the cases of *In re Badger,* 2 Cir., 9 Fed. (2d) 560; *Fletcher* v. *Kellogg,* 55 App. D. C. 351, 6 Fed. (2d) 476, 40 A. L. R. 1525; *Crowley* v. *Wolf,* 281 N. Y. 59, 22 N. E. (2d) 234, 131 A. L. R. 970.

In the *Badger case* [2 Cir., 9 Fed. (2d) 562] referred to, the opinion has this to say:

"The rule is that, where an attorney has been retained on a specific contract and was discharged for a justifiable cause, he may not recover compensation either in an action upon contract or upon a *quantum meruit* basis. The reason for this rule is that the contract of employment is entire and in order to earn his compensation, the attorney is subject to the same test as every other contract performer; he must show full performance in accordance with his retainer in order to recover the stipulated compensation."

This case is conditioned that he was discharged for a justifiable cause.

In the case of *Fletcher* v. *Kellogg, supra* [55 App. D. C. 351, 6 Fed. (2d) 478, 40 A. L. R. 1525], the appellant submits the following:

" . . . The defendant accordingly was entitled to a reasonable time and opportunity to take proper action, . . . This opportunity was fully given him.
. . .

" . . . since the defendant's fee was contingent upon success, he cannot now recover compensation for his unsuccessful efforts."

This case we find to be conditioned on the fact that counsel had reasonable time to take proper action.

And, in the case of *Crowley* v. *Wolf, supra* [281 N. Y. 59, 22 N. E. (2d) 237, 131 A. L. R. 970], we find the following:

"Assuming, however, that the plaintiff was justified in treating the defendant's letter as a discharge, the question remains whether in the circumstances the discharge was wrongful. A client who employs an attorney on a contract for a contingent fee has an absolute right to discharge the attorney and will not be liable on *quantum meruit* if the discharge was in good faith, for cause, and not wrongful. . . . "

This case has to do with whether in the circumstances the discharge was wrongful.

One of the principal clauses in the contract of employment is as follows:

"The said attorney hereby agrees that he will take, file and prosecute the said action, in all respects in a proper, diligent and professional manner, to the end that the said mortgage may be finally and completely foreclosed, judgment taken against the mortgagor company, and Sheriff's Deed be received in favor of the said client or her assignees, if any, with the understanding that the said attorney will use his best efforts to make any settlement of the

said case that may be desired and directed by his said client;''

The covenants entered into by the appellant relative to fees are as follows:

''One hundred dollars ($100.00) cash, paid herewith, receipt of which is hereby acknowledged by the said attorney;

''One hundred dollars ($100.00), lawful money of the United States of America to be paid to the said attorney by the said client upon the making and entry by the said court of any order of continuance of such foreclosure cause under the moratorium laws of the State of Arizona, or upon the issuance in such cause of Sheriff's Certificate of Sale;

''Five per cent (5%) of any amount received in settlement of such action, such settlement to be approved by such client; and

''Ten (10%) of amount paid in redemption of such property after Sheriff's sale, if such amount be allowed by the Court as attorney's fee of client, otherwise such amount as is allowed by the court; and

''Either of such last mentioned amounts to be less the sum of Two hundred dollars above provided for.''

On June 19, 1940, the appellee addressed a letter to the appellant as follows:

''Dear Miss Covert:

''It is now more than sixty days since I have had any word from you relative to the setting for trial of the case of *Covert v. Arizona Mortuary.* Please see me promptly concerning the setting of this case.

''The court room has been aircooled and the case can now be tried during the hot portion of the year without unduly punishing you.

''The unexpected action, from session to session, by the legislature made it impossible to bring this case to trial for seven years, during which I have continually devoted my attention to the matter without fee payment. It must be disposed of with promptness, now that it may be tried.

"I shall expect you to get in touch with me in the very near future concerning the setting of the case."

Again on September 6, 1940, the appellee herein wrote to the appellant, his client, stating that it was then more than four months since he started negotiations with her for the setting of the case for trial and that he had heard nothing from her.

On January 23, 1942, appellant wrote the appellee as follows:

"Dear Mr. Allen:
"This is to notify you that your services as attorney in the case of the Tucson Mortuary cause is no longer required. You were employed in June or there abouts in 1933. Your fee was paid in full at that time, with provisos—cash Two Hundred Dollars. The cause was taken out of your hands by the Power of Law and since your services have not required, so your responsibility to me is ended. Thanks for your efforts anyhow if they were futile."

Appellee replied to her letter of February 2, 1942, but we feel that the contents are unimportant.

On February 16, 1942, the appellant wrote the appellee as follows:

"Dear Sir:
"Your letter of Feb. 2nd received today. I sent you a notice dated January 23rd, 1942, in which I needed your services no longer. Yes I wrote it that your services were no longer needed. You were not able to get a foreclosure of the mortgage, and when that Mortgage Law went into effect, I no longer considered you my lawyer.

"Now I have no longer your services in this Arizona Mortuary cause. If you remember a year or two you were anxious to bring the cause into court, and I refused to have it done.

"If my name was not signed in ink instead of the Typed name it was my letter and in force. You did nothing since Sep. 1933 when you lost out, and the cause lay in the court ever since.

"The letter to you, date Jan. 25, 1942 stating I need your services no longer is still in force. I do not need your services. You remember sometime previously, some months ago that you could not conduct the cause. But it seems you did not understand. You cannot win and I am sorry, So please Understand I do not need your services any longer. *I have repeated for emphasis* ·(in ink)"

In this letter of February 16th the appellant says: "You did nothing since Sep. 1933 when you lost out, and the cause lay in the court ever since." In this respect the first Mortgage Moratorium Law went into effect in March, 1933, but we find from the files that the appellee has been diligent in protecting her rights and taking the necessary steps from the time he had to cease action by reason of that law. He required taxes to be paid, and at the time his negotiations with her were ended, she had been receiving, since the year 1937, the sum of $166.66 a month.

The letters of the appellant indicate that she is a lady of advanced years, and it is, of course, all the more reason why she should be dealt with by an attorney in a very patient way. However, it appears that the appellee rendered a service over a period of from eight and one half to nine years. From the record it shows that he made twenty-five appearances in court, forty conferences with appellant, fifty conferences with Mr. John Haynes, attorney for Arizona Mortuary, nineteen or twenty conferences with representatives of appellant and seven conferences with witnesses.

The appellant in re-direct examination testified as follows:

"Q. Now do you know of any reason, anything else that will help the court in determining this matter? A. Well, the reason that I didn't want him to continue as my lawyer was because Haynes was too strong for him. He could influence him and he

couldn't fight for me in the way as if I had a stronger lawyer. Now I have got no feeling against him in any way, but I didn't think that he could win, and I thought the best thing was to get rid of him instead of losing that myself, because they would have won it."

From 94 Or. 550, 179 Pac. 657, 186 Pac. 32, 35, in the case of *Dolph* v. *Speckart* we quote the following, which we believe to be the rule established in such cases as this one:

" . . . Where one employs an attorney and makes an express valid contract, stipulating for the compensation which the attorney is to receive for his services, such contract is generally speaking, conclusive as to the amount of such compensation. A client has the unquestionable right to terminate the relationship between himself and his attorney, yet where an attorney is prematurely discharged by the client, or is otherwise wrongfully prevented from performing the professional duties for which he was employed, without fault on the part of the attorney, the latter is entitled to compensation. This is so even though the arrangement was for a contingent fee, provided the contingency has happened. . . . "

In this case the contingency has happened although this appellee was prevented from carrying the case to a conclusion by his discharge, yet we understand from the brief presented to us by the appellant that "Subsequent to discharging appellee, appellant retained other counsel who proceeded to trial in the foreclosure suit and recovered judgment as prayed for."

The important issue in this case is, was the discharge of the attorney, the appellee herein justifiable? And, as we see the evidence, and from the great amount of work which he has rendered, and the diligence that he has given to the case, it gives us reason to support the judgment of the court below

in the belief that there was no justification for his discharge. It is regrettable that the litigation involves an excellent elderly woman, but the appellee could do no other than to abide his time during the pendency of the Moratorium Law in our state, and it appears that with reasonable diligence he prosecuted the action thereafter until she discharged him.

Judgment affirmed.

McALISTER, C. J., and ROSS, J., concur.