[Civ. No. 14472.   First Dist., Div. Two.   Mar. 28, 1951.]

DALLMAN SUPPLY COMPANY (a Corporation), Plaintiff and Appellant, v. SMITH-BLAIR, INC. (a Corporation), Defendant and Appellant.

David Livingston, Louis F. DiResta for Plaintiff and Appellant.

J. W. Coleberd, R. A. Rapsey and Richard P. Lyons for Defendant and Appellant.

DOOLING, J.—Plaintiff Dallman Supply Company is a corporation engaged principally in the business of selling plumbing supplies. It is the successor of a partnership which did business under the same name. Defendant Smith-Blair, Inc., is a corporation engaged in the manufacture of waterworks equipment. In 1944 Dallman Supply Company, then a partnership, engaged one Harden as manager of a waterworks department and negotiations were entered into with defendant for an exclusive agency in Northern California for the distribution of defendant's products. On October 20, 1944, acting for plaintiff, Harden sent a letter to defendant which, omitting address and signature, reads:

"Please enter the attached order for materials for our stock at Sacramento.

"In accordance with the terms of our verbal agreement, we are to act as your sole distributor in Northern California as far south as San Luis Obispo on the West and South to Bakersfield on the East, and will receive a commission of 20% on all orders, whether they are placed through us or sent direct to you, with the exception of the California Water Service Company unless the California Water Service Company specifically wish to place their orders with us along with other materials, in which case we reserve the right to do business with them on an equal basis with yourselves.

"It is further understood that this agreement can be terminated at any time after a thirty day written notice from either party, if in your opinion we are not sufficiently covering the territory to increase the volume of business. In such case, any stock which we may have will be returnable to you at the current resale price less our discount.

"If the above does not meet with your approval, please let us know by return mail. Assuring you of our full cooperation at all times, we are."

Following the receipt of this letter by defendant plaintiff's predecessor engaged in the sale of defendant's products in Northern California and both parties proceeded for a period to perform in accordance with its terms, defendant accounting to plaintiff's predecessor for commissions on its products

sold directly by it in that territory to others than California Water Service Company at the specified rate of 20 per cent. Thereafter defendant commenced to express dissatisfaction to Harden at the volume of sales of its products being made by Dallman Supply Company, accounted for commissions allowed on sales made directly by defendant at a reduced rate and such lower commissions were accepted by Dallman Supply Company without protest.

Finally, some time after the incorporation of plaintiff, defendant over plaintiff's protests refused to pay any further commissions on sales made directly by it and on September 4, 1947, defendant sent a letter to plaintiff offering to buy back from plaintiff ''all merchandise heretofore . . . sold to you by us, and now in your possession, but excepting therefrom all such parts of said merchandise as are in a damaged condition and also all such parts . . . as are now obsolete by reason of improved and different designs . . . We reserve the right to determine what parts of such merchandise are obsolete by reason of said changes in design.'' The letter demanded delivery to defendant's plant of such merchandise by September 18, 1947, and the retransportation of rejected merchandise from defendant's plant all at plaintiff's expense. No formal notice of the termination of the contract was ever given by defendant to plaintiff.

Plaintiff thereupon commenced this action for declaratory relief and an accounting of unpaid commissions on sales made directly to customers in Northern California by defendant.

The court found that the letter of October 20, 1944 was the contract of the parties and that said contract remained in full force and effect until September 4, 1947, and judgment was given plaintiff in the sum of $8,473.21 for commissions at the rate of 20 per cent on sales made by defendant directly to customers in Northern California prior to September 4, 1947, for which defendant had not theretofore accounted to plaintiff, after deducting an admitted offset.

The court made the following finding which is not attacked by either party:

''The Court is advised that the parties hereto have, by an agreement entered into subsequent to the commencement of this action, settled and adjusted their dispute with respect to all and any rights of Dallman to return said stock of goods to Smith-Blair and all and any obligations of Smith-

Blair to accept the return of said goods from Dallman and pay Dallman for the return thereof. Consequently it is not necessary to make any findings with respect to this aspect of the controversy between the parties."

Both parties have appealed from the judgment.

## Defendant's Appeal

On its appeal defendant attacks the finding of the trial court that the letter of October 20, 1944, quoted above is the contract of the parties. It is true that defendant did not sign this letter, but there is ample evidence from which the court could find that defendant accepted the letter and acted upon it. "It is a settled rule that the receipt and acceptance by one party of a paper signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor, as well as the signer, to the terms of the paper." (*Frankfort etc. Co.* v. *California A. M. & Wire Co.*, 28 Cal.App. 74, 82 [151 P. 176]; *Remsberg* v. *Hackney Manufacturing Co.*, 174 Cal. 799, 802 [164 P. 792]; *Barlow* v. *Frink*, 171 Cal. 165, 170 [152 P. 290]; *Fidelity etc. Co.* v. *Fresno Flume etc. Co.*, 161 Cal. 466, 473 [119 P. 646, 37 L.R.A.N.B. 322]; *Bloom* v. *Hazzard*, 104 Cal. 310 [37 P. 1037]; *Morgenstern* v. *Bailey*, 29 Cal.App.2d 321, 324 [84 P.2d 159]; *California Jewelry Co.* v. *Provident Loan Assn.*, 6 Cal.App.2d 506, 510-511 [45 P.2d 271].)

The complaint alleged that "on or about October 20, 1944 defendant entered into an oral and written contract" with plaintiff's predecessor, setting out the terms of the letter not *in haec verba* but according to its legal effect. This allegation was admitted in the answer filed. On the trial plaintiff insisted that the letter embodied all of the terms of the contract and defendant attempted to prove an additional oral term of the agreement that Dallman Supply Company was to keep at least 14 salesmen in the territory who would canvass the territory once every two weeks. It is defendant's theory that the evidence established this oral agreement and its breach by plaintiff. At the close of the trial defendant moved to amend its answer to deny the contract as alleged in the complaint and over plaintiff's objection such leave to amend was granted. Thereafter plaintiff moved to vacate this order and this motion was denied. No amendment to the answer was actually filed.

Defendant now argues that by its admission of the allegation of the complaint that the contract was *oral* and written it stands as an admitted fact that the letter did not embody

the entire contract. Plaintiff counters that by obtaining leave to amend its answer to deny this allegation defendant elected to put the allegation that the contract was oral and written in issue, even though no formal amendment to the answer was afterwards filed. (*Greenwood* v. *Greenwood,* 112 Cal.App. 691 [297 P. 589].)

It is sufficient to resolve these contentions that a reading of the record clearly shows that throughout the trial plaintiff consistently took the position that the writing embodied the entire contract and defendant attempted to meet that issue with its proof. Defendant's motion to amend its answer to deny the contract as alleged in the complaint was a further recognition that this issue was in the case. The entire trial having proceeded on that theory under settled principles defendant will not be permitted to adopt a different theory on appeal. (2 Cal.Jur., Appeal and Error, § 69, p. 239 et seq.)

It may also be noted that the letter itself made express provision for the subject of failure to sufficiently cover the territory in the sentence reading: "It is further understood that this agreement can be terminated at any time after a thirty day written notice . . . if in your opinion we are not sufficiently covering the territory to increase the volume of business." Defendant, for whatever reason it may have had, elected not to terminate the contract. It could not at the same time continue the contract in force for its benefit and expect to escape its burdens.

Defendant further argues that by accepting smaller commissions than those called for by the contract plaintiff impliedly consented to its modification. No modification of the contract was pleaded in defendant's answer, but apart from that while the acceptance of smaller instalments than those due it bound plaintiff as to those instalments, the acceptance of those lesser amounts would not effect a modification of the written contract as to future payments. (*Stoltenberg* v. *Harveston,* 1 Cal.2d 264, 266-267 [34 P.2d 472]; *Sinnige* v. *Oswald,* 170 Cal. 55, 57 [148 P. 203]; *Taylor* v. *Taylor,* 39 Cal.App.2d 518, 522 [103 P.2d 575]; *State Guaranty Corp.* v. *Richardson,* 9 Cal.App.2d 287 [49 P.2d 606].)

### Plaintiff's Appeal

Plaintiff appeals from that portion of the judgment determining that the contract terminated on September 4, 1947, claiming that the contract was not terminated until the date when the parties adjusted their dispute concerning the duty

of defendant to repurchase the stock of its goods held by plaintiff. As a consequence plaintiff argues that it was entitled to commissions to the latter date.

The complaint for declaratory relief put in issue the question whether by the offer of September 4, 1947, to repurchase these goods the contract was terminated, plaintiff asserting that it could only be terminated by the 30-day notice provided for in the contract.

■ The offer to repurchase, conditioned as it was, was unacceptable to plaintiff. The obligation to repurchase was by the express terms of the contract only cast on defendant *upon the termination of the contract*. When the parties advised the court that this issue, which arose out of the qualified offer of September 4, 1947, to repurchase had been settled and adjusted it was a fair inference to draw that the parties had elected to treat the offer of September 4, 1947, which was thus compromised, as the date of termination of the contract.

Nothing except the fact that this dispute had been settled and adjusted appears in the record. ■ The burden is cast on an appellant to present a record affirmatively showing the error asserted on appeal. (*Vaughn* v. *Jonas*, 31 Cal. 2d 586, 601 [191 P.2d 432]; *Palpar, Inc.* v. *Thayer*, 83 Cal. App.2d 809 [189 P.2d 752].)

Judgment affirmed, without costs to either party.

Nourse, P. J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied April 27, 1951, and defendant and appellant's petition for a hearing by the Supreme Court was denied May 24, 1951.