[Civ. No. 20484.   First Dist., Div. Two.   Jan. 2, 1963.]

HAROLD A. STONE, Plaintiff and Respondent, v. LA FAY-
ETTE E. CARPENTER et al., Defendants and Appel-
lants.

Bryce Swartfager and Leonard J. Karsevar for Defendants and Appellants.

Sullivan, Roche, Johnson & Farraher for Plaintiff and Respondent.

AGEE, J.—Defendants appeal from an adverse judgment in an action upon a contingent contract for legal services rendered by plaintiff's assignor, which is a law firm. Defendants were husband and wife. The defendant wife died on July 1, 1958, and her husband was thereafter appointed administrator of her estate. For the purpose of clarity, the husband will be referred to herein as the appellant and the law firm as the respondent.

The contract is dated June 23, 1950. It recites the rendition of legal services by respondent in four designated matters and provides that in consideration of such services appellant agrees to pay and respondent agrees to accept as full compensation for all services rendered in said matters one-third of any recovery which appellant shall receive growing out of said litigation, "which shall include one third ($\frac{1}{3}$) interest in the Carpenter Building situated in Petaluma, California, if and when title to said property has been quieted" in appellant.

Judgment was rendered herein on August 3, 1961, awarding to the respondent an undivided one-third interest in the Carpenter Building and one-third of the net income therefrom from and after February 7, 1952.

The principal contention of appellant is that the contingency, upon which respondent's right to receive an interest in the real property depended, never occurred. That is, title to said property was not quieted in appellant.

Respondent's reply is that it had performed all of the

services necessary to accomplish the desired result but that then, without any valid cause or reason, appellant prevented the accomplishment of the desired objective by refusing to complete the settlement previously agreed to by him.

Appellant himself is an attorney at law, having been practicing as such since 1911. He first consulted respondent in 1946 concerning the fact that his aunt (Alice Marie Meyer) had been declared by the Sonoma County Superior Court to be an incompetent person and he desired respondent to handle the appeal from the order declaring her to be incompetent and appointing the Public Administrator as guardian of her estate. Respondent undertook the employment. Although the one-third fee was discussed, no formal arrangements were made with respect thereto until the written contract of June 23, 1950, was executed. Appellant's personal interest in his aunt and her estate will be indicated hereafter.

The four litigation matters referred to in the contract are as follows: (1) *Alice Marie Meyer*, appellant's aunt, had signed a gift deed, dated September 6, 1946, deeding the property involved herein to appellant. She was thereafter declared to be incompetent and the Public Administrator was appointed guardian of her estate; the Public Administrator filed an action to cancel the deed; a few days later, on February 17, 1947, she died; upon the filing of a certified death certificate in the deed cancellation action, no further proceedings were taken therein and the guardianship appeal was abandoned.

(2) *Albert C. Meyer*, son of Alice Marie Meyer, filed a contest to his mother's will *before* probate. Appellant and his wife were named in this will as sole beneficiaries. Respondent represented appellant and his wife in this contest. A trial resulted in a judgment in their favor. The will was then admitted to probate on October 11, 1948, and appellant, who was named as such in the will, was appointed executor. No appeal was taken from the judgment.

(3) *Viola Meyer* and *Viola Marie Guay* are the wife and daughter, respectively, of Albert C. Meyer. They were legatees under an earlier will. Each filed a contest *after* probate. On October 10, 1949, respondent filed an answer to each contest on behalf of appellant and his wife. Respondent then moved to dismiss both contests, on the ground that the right of each to contest was barred by the former judgment against Albert C. Meyer (Prob. Code, § 380). The motion was granted on April 29, 1951. Viola Meyer and Viola Marie Guay both

appealed. The judgment of dismissal was reversed (*Estate of Meyer*, 116 Cal.App.2d 498 [251 P.2d 430]) and the remittitur was filed in the trial court on May 5, 1953. This decision, of course, established the right of Viola Meyer and Viola Marie Guay to contest the will under which appellant and his wife got everything.

(4) *Carpenter* v. *Gilardi* was an action against a tenant in the Carpenter Building for unpaid rents. It was somewhat complicated. Judgment against the tenant was obtained after a trial and the money recovered therefrom was distributed in respondent's office on February 14, 1952, with appellant being present. The costs of the litigation were gone over and a statement thereof was furnished to him. Checks were then issued to appellant, his wife, and the holder of a one-sixth interest in the building. One-third of the recovery was retained by respondent as compensation for its services. This was all in accordance with the contract. No complaint has ever been made concerning this transaction.

On behalf of appellant, respondent negotiated a settlement with all parties having any possible claim to or against the real property in question. On November 16, 1954, respondent wrote to appellant advising him that all of the necessary documents had been approved by the various adverse parties.

Appellant testified that he examined these documents and that they met with his approval with the exception of two technical corrections. In a letter of May 17, 1955, from appellant to respondent, appellant called attention to these. The corrections were made.

The settlement called for payment of $2,500 by appellant to contestants Viola Meyer and Viola Marie Guay, and the giving of a satisfaction of judgment upon a $3,500 note obtained in the Estate of Alice Marie Meyer, deceased, against Albert C. Meyer. In return, the contestants were to dismiss their will contests, the Public Administrator, as guardian of the estate of the aunt, and later as special administrator of her estate, was to withdraw his first and final accounts in both matters, Albert C. Meyer was to file a dismissal of a quiet title action filed by him on October 27, 1951, and Albert C. Meyer, Viola Meyer and Viola Marie Guay were to quitclaim any interest in the real property to appellant and his wife.

On June 27, 1955, respondent advised appellant that all of the necessary documents had been executed by the respective parties and were in its possession; that all that was necessary to close was for appellant and his wife to forward a cashier's

check for $2,500, together with the documents to be executed by them, which they had had in their possession since February 16, 1955.

Appellant does not deny that the documents obtained by respondent completely eliminated every possible claim that could be made against the real property and left him with a clear title. He does not deny that he and his wife agreed to the settlement. His position simply is that the settlement was never *consummated* because he did not execute the documents delivered to him by respondent or pay over the $2,500 called for under the settlement.

Appellant never once disclaimed the settlement. He admitted on the witness stand that on several occasions he had asked opposing counsel in the pending actions for extensions of time in order to carry out the terms of the settlement. He testified that shortly prior to July 18, 1956, he had opened an escrow in Santa Rosa for the purpose of carrying out the terms of the settlement. The trials of the actions were continued by the court many times because of the settlement. On July 18, 1956, respondent wrote to appellant that ''the last time the contest came up for trial, the Judge was very put out at your failure to carry through.''

Appellant may have had a motive for his delay. It is apparent from his testimony that, in his opinion as a lawyer, the actions still pending could not now be tried because of the passage of time. When asked about whether the quiet title action was still pending his answer was, ''Well, it couldn't be tried now.'' One further bit of illuminating testimony by appellant is as follows: ''Q. And, isn't it a fact that every single document that was called for in this settlement was obtained and submitted to you? A. I believe that is true, yes. Q. And, isn't it a fact that you were repeatedly written letters by the firm of Sullivan, Roche, Johnson and Farraher and after that settlement date of January 1955 asking why you had not completed the carrying out of the terms of that settlement agreement that you had made? A. Yes, that's true. Q. Did you ever answer any one of those letters? A. I don't believe I did.''

The record is absolutely clear that respondent had performed all of the services required of it and had accomplished everything necessary to clear or quiet title to the real property. The trial court so found. It further found that appellant and his wife had ''entered into a settlement agreement with all parties concerned for settlement of those certain controversies

described in said written contract, and directed plaintiff's assignor to prepare the documents necessary to effect said settlement; plaintiff's assignor prepared said documents and obtained all signatures necessary therefor, but defendant La-Fayette E. Carpenter and Flora M. Carpenter, his wife, have failed, refused and neglected to execute said documents without any just cause therefor. . . . By reason of said willful failure, refusal and neglect of said defendant LaFayette E. Carpenter and Flora M. Carpenter, his wife, to execute said documents as aforesaid, said defendant LaFayette E. Carpenter and Flora M. Carpenter, his wife, have, without any just cause therefor, prevented the termination of said litigation and have thus prevented plaintiff's assignor from receiving the compensation to which plaintiff's assignor is entitled under the terms of said written contract between plaintiff's assignor and defendant LaFayette E. Carpenter and Flora M. Carpenter, his wife.''

No attack is made upon these findings. Appellant in his brief, under the caption ''Question on Appeal,'' simply poses the question: '' [W]as the right to receive the one-third interest in the property *contingent* upon the possible happening of a future event, which the evidence shows did not come to pass?'' This, of course, is directed to the phrase in the contract, ''if and when title to said property has been quieted in LaFayette E. Carpenter and Flora M. Carpenter, his wife.''

However, where an attorney has fully performed his services for a client under a contingent fee contract, but the client wrongfully prevents the completion of the purposes for which the attorney was employed, the client remains obligated to compensate his attorney for the services rendered in accordance with the terms of the contract. (*Zurich G. A. & L. Ins. Co., Ltd.* v. *Kinsler,* 12 Cal.2d 98, 100-101 [81 P.2d 913]; *Jones* v. *Martin,* 41 Cal.2d 23, 27 [256 P.2d 905]; *Hendricks* v. *Sefton,* 180 Cal.App.2d 526, 532-533 [4 Cal.Rptr. 218].)

All of the foregoing cited cases involve wrongful discharge of an attorney who is performing services under a contingent contract. But the principle is the same, i.e., the client has wrongfully prevented the completion of the contract.

Appellant complains that the trial court failed to make specific findings on certain special defenses alleged in paragraph III of the answer. The finding on this paragraph is as follows: ''The allegations contained in Paragraph III of defendant's Answer to Amended Complaint are not true.''

The first three of these defenses were fully covered by the court's findings as to the allegations of the amended complaint and were in the affirmative. It would serve no useful purpose to have negative findings as to these so-called special defenses. Each of such findings would of necessity have to commence with the phrase, "that it is not true," etc. (See *Petersen* v. *Murphy* (1943) 59 Cal.App.2d 528, 534 [139 P.2d 49].)

The remaining two special defenses raise the statute of limitations, citing sections 337, subd. 1 and 339, subd. 1 of the Code of Civil Procedure. This is an action upon a written contract, which was breached on or about June 27, 1955, when everything was ready to be closed and, as the court found, appellant willfully failed, refused, and neglected to complete the settlement. The action was filed on August 12, 1958, well within the four-year period. Section 339, subd. 1 does not apply to this type of action.

Even if all of the foregoing were not so, the law permits a general statement in the findings regarding the allegations in a pleading. For example, in *Beck* v. *Weather-Vane Corp.* (1960) 185 Cal.App.2d 688, 694 [8 Cal.Rptr. 680], the following finding was upheld: " 'Except as otherwise herein specifically found, *none of the allegations* of the first amended complaint, or of the *amendment to first amended complaint, is true.*' " (See generally, 2 Witkin, California Procedure, Trial, § 114.)

Appellant's last contention is that, "as a matter of legal construction the 'settlement' or the 'proposed settlement' was wholly *outside* of the Memorandum Contract, and that there is, therefore, no evidence to support the finding," i.e., that appellant without just cause prevented the completion of respondent's services.

We do not agree. The obtaining of quitclaim deeds, releases and dismissals in a situation such as this is just as effective a way to clear the title to real property as is a quiet title action. The trial court did not construe the contract to require litigation to clear the title in order to entitle respondent to compensation. Neither do we.

The settlement agreement achieved precisely the object contemplated by the contract in that it disposed of all pending or possible claims that were being, or might be, made against appellant's rights to the subject property.

Incidentally, appellant points out that by not completing the settlement, he put himself in a position to move to dismiss

the will contest on or after May 6, 1956, the remittitur therein having been filed in the trial court on May 5, 1953, and he could have moved to dismiss the quiet title action filed by Albert C. Meyer on or after October 28, 1956, it having been filed on October 27, 1951 (Code Civ. Proc., § 583). Therefore, he argues, respondent's services were of no value in regard to these matters.

However, the rights under a contract are created at the time the contract is formed. The contract itself determines the extent of the rights of the parties (*Reynolds* v. *Sorosis Fruit Co.*, 133 Cal. 625 [66 P. 21]). When one party to a contract has fully performed all that is required of him, the other party should be compelled to fulfill his part of the contract.

For example, respondent engaged to handle the appeal from the order declaring appellant's aunt to be an incompetent person. Very shortly thereafter, while the appeal was pending, the aunt died and the appeal was therefore abandoned. Respondent was thereby relieved of performing any further legal services in this matter. But the termination of this phase of the litigation in no way altered respondent's right to the compensation agreed upon in the contract.

Judgment affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 13, 1963.