[Civ. No. 25489.   First Dist., Div. One.   May 6, 1969.]

ERVING BENARD, Plaintiff and Appellant, v. BRUCE WALKUP et al., Defendants and Respondents.

ERVING BENARD, Plaintiff and Respondent, v. EDWARD STERN, Defendant and Appellant.

(Consolidated Cases.)

596

Michael Lewton for Plaintiff and Appellant and Plaintiff and Respondent.

Walcom & Harmon and Leo J. Walcom for Defendant and Appellant.

Sedgwick, Detert, Moran & Arnold and John B. Marchant for Defendants and Respondents.

MOLINARI, P. J.—In these consolidated legal malpractice actions, defendant Edward Stern appeals from a judgment in favor of plaintiff, and plaintiff appeals from a judgment in favor of defendant Bruce Walkup, James C. Downing, E. Robert Wallach and Gerald C. Sterns (hereinafter referred to as "Walkup"). The questions on appeal involve the application of the statute of limitations to claims of malpractice on the part of consecutive attorneys retained by plaintiff. For the reasons hereinafter stated, we conclude that the judgments must be affirmed.

## Facts

On May 4, 1961, plaintiff was injured in an automobile accident in Oakland involving a vehicle owned by one Leonard Williams. On November 20, 1961, plaintiff consulted with and retained defendant attorney Stern to represent him in connection with the automobile accident. At this time plaintiff signed a contingent fee agreement by which he employed Stern to "commence and prosecute" his claim and assigned to Stern a certain percentage of all amounts which might be recovered. The agreement consisted of a sheet of mimeographed material on letterhead stationary which identifies defendant Stern as an attorney. It contains certain blank spaces for entry of the date of the injury and the name of the individual injured. The terms of the agreement allow the at-

torney to withdraw in the event that his investigation discloses ''no insurance, no liability of defendant, or contributory negligence.'' Below plaintiff's signature on this agreement the following language appears: ''I accept said employment and agree to do all things necessary to prosecute said claim.'' This statement is followed by Stern's signature. As of May 5, 1962, no action had been filed by Stern against Williams, and on this date any such action was barred by the one-year statute of limitation provided in Code of Civil Procedure section 340.[1]

On January 29, 1964, plaintiff retained Walkup to represent him in an action against Stern. At that time plaintiff signed a contingent fee agreement with Walkup. On July 31, 1964, Stern sent Walkup a copy of the contingent fee agreement between him and plaintiff. With respect to this agreement Stern testified that he did not sign it or fill in the blanks at the time plaintiff signed the agreement, but that he did so just before sending it to Walkup.

Sometime thereafter and prior to November 12, 1964, Walkup informed plaintiff that ''Ohio Farmers'' had advised him that the two-year statute of limitations barred the malpractice action against Stern, and Walkup advised plaintiff he should consult other counsel.[2] On November 12, 1964, Walkup nonetheless filed an action against Stern on behalf of plaintiff, alleging both breach of contract and negligence in failing to commence the action against Williams before it was barred. Stern raised the defense of the statute of limitations in his answer. Thereafter, on May 3, 1966, plaintiff filed suit against Walkup alleging both breach of contract and negligence in failing to commence the action against Stern before it was barred.

The two cases were consolidated for trial by the court with counsel for plaintiff in the action against Walkup being substituted for Walkup in the action against Stern. At the trial it was stipulated that if an action had been filed against Williams on behalf of plaintiff, plaintiff would have recovered damages.

### Findings and Conclusions

Essentially, the trial court found that on November 20,

---

[1]Unless otherwise indicated, all statutory references hereinafter made are to the Code of Civil Procedure.

[2]If the two-year statute applied, an action against Stern was effectively barred on May 5, 1964, which was more than two years after Stern's failure to file the original action against Williams. (See § 339.)

1961, plaintiff retained Stern to prosecute the action against Williams; that Stern accepted such employment; that plaintiff executed a contingent fee agreement on the letterhead of Stern; that Stern breached his contract by failing to make a timely filing against Williams; and that as a result plaintiff suffered damages in the amount of $7,500. The court further found that Walkup used reasonable care, skill and diligence in commencing the action against Stern on November 12, 1964. The trial court then concluded that plaintiff's cause of action based on breach of contract by Stern was not barred because it was governed by the four-year statute of limitations provided in section 337. That section calls for the four-year limitation on actions based on contracts, obligations or liabilities founded on an instrument in writing. The court further concluded that plaintiff's cause of action for the negligence of Stern was barred by the two-year statute of limitations set out in section 339. Accordingly, the court concluded that plaintiff was entitled to judgment against Stern in the sum of $7,500 and entitled to no recovery from Walkup.

## Contentions

Stern does not question any of the basic findings of the trial court. ■■■ His chief contention is that the action against him should be considered barred by the two-year statute of limitations because it was not founded on an instrument in writing. He strongly urges that there was no written contract between him and plaintiff on which to base this action. ■■■ Stern also urges that if he is liable to plaintiff, the amount of damages should be reduced by the amount of the contingent fee plaintiff would have been required to pay if the initial case against Williams had been filed and carried to a successful conclusion. Plaintiff in his appeal from the judgment in favor of Walkup makes no specific contentions. Rather, it is his basic position that in the event the judgment against Stern is reversed because of the bar of the statute of limitations, judgment should be entered against defendant Walkup for failing to timely file the action against Stern.

## The Statute of Limitations

■■■ The present rule with respect to legal malpractice actions is that such actions are governed by the two-year limitations period which begins to run from the time of the negligent act and not from the time of the discovery of the negligent act. (*Alter* v. *Michael*, 64 Cal.2d 480, 481-483 [50 Cal.Rptr.

553, 413 P.2d 153] ; *Chavez* v. *Carter,* 256 Cal.App.2d 577, 580 [64 Cal.Rptr. 350] ; *Fazio* v. *Hayhurst,* 247 Cal.App.2d 200, 202-203 [55 Cal.Rptr. 370] ; *Yandell* v. *Baker,* 258 Cal.App.2d 308, 311 [65 Cal.Rptr. 606] ; *Bustamante* v. *Haet,* 222 Cal. App.2d 413, 415 [35 Cal.Rptr. 176] ; *Griffith* v. *Zavlaris.* 215 Cal.App.2d 826, 828 [30 Cal.Rptr. 517] ; see *Heyer* v. *Flaig,* 70 Cal.2d 223, 231-234 [74 Cal.Rptr. 225. 449 P.2d 161].) The cases which have discussed this rule, however, have apparently dealt with actions upon a contract, obligation or liability not founded upon an instrument in writing.[3] The existence of a valid contingent fee contract and the subsequent application of the four-year period were not in issue in any of the cases which applied the two-year period. Therefore, the question of the proper statute of limitations in an attorney malpractice suit predicated on a contingent fee agreement is a matter of first impression.

Section 337, subdivision 1, provides that "An action upon any contract, obligation or liability founded upon an instrument in writing" must be commenced within four years. In *Stone* v. *Carpenter,* 211 Cal.App.2d 491, 497 [27 Cal.Rptr. 203], this section was held to be applicable to an action on a written contingent fee contract for legal services.[4] Our inquiry, in the instant case, therefore, must be directed to whether the present action is one "founded upon an instrument in writing." ▓ In making this determination it is not sufficient that the cause of action is in some way remotely or indirectly connected with such an instrument or that the instrument is a link in the chain establishing the cause of action, but the instrument must, itself, contain a contract to do the thing for the nonperformance of which the action is brought. (*McCarthy* v. *Mt. Tecarte Land & Water Co.,* 111 Cal. 328, 340 [43 P. 956] ; *O'Brien* v. *King,* 174 Cal. 769, 772 [164 P. 631] ; *Meyers* v. *Guardian Life Ins. Co.,* 20 Cal.App.2d 268, 270 [66 P.2d 753].)

▓ Adverting to Stern's contention, we first consider the argument by which he apparently maintains that the agreement was not a contract within the purview of the four-year statute because it was not signed by him before the ex

---

[3]Some of the cases simply do not mention the form of the contract. Others note specifically that the attorney was orally retained. (*Fazio* v. *Hayhurst, supra,* 247 Cal.App.2d 200; *Yandell* v. *Baker, supra,* 258 Cal. App.2d 308.)

[4]In *Stone* the contingent fee contract was not of the standard variety often employed in personal injury cases. Rather it was a somewhat involved contract for the settlement of claims against an estate.

piration of the two-year statute. We find no merit in this argument because it is clearly the law that "The four-year statute of limitations, unlike the statute of frauds, does not require that the writing be signed by the party to be charged." (*Amen* v. *Merced County Title Co.*, 58 Cal.2d 528, 533 [25 Cal.Rptr. 65, 375 P.2d 33].) Also, the record is clear that even though Stern did not sign immediately, he accepted the agreement as signed by plaintiff. ▮ It is well established that the receipt and acceptance by one party of a writing signed by the other only, and purporting to embody all the terms of a contract between the two, binds the acceptor as well as the signer, to the terms of the writing.[5] (*Fidelity etc. Co.* v. *Fresno Flume etc. Co.*, 161 Cal. 466, 473 [119 P. 646, 37 L.R.A. N.S. 322]; *Beatty* v. *Oakland Sheet Metal etc. Co.*, 111 Cal.App.2d 53, 62 [244 P.2d 25]; *Nissen* v. *Stovall-Wilcoxson Co.*, 120 Cal.App.2d 316, 318 [261 P.2d 10]; *Dallman Supply Co.* v. *Smith-Blair, Inc.*, 103 Cal.App.2d 129, 132 [228 P.2d 886].) ▮ Stern's acceptance of the agreement is also demonstrated by his signing the agreement before the four-year period expired.

▮ Next, Stern argues that no contract existed because the blanks in the contingent fee form for the date of its execution, the date of the injury, and the identity of the injured individual were not filled in until the expiration of the two-year statute and after the conclusion of the attorney-client relationship. This argument is equally without merit. As we shall later point out, the contingent fee form does express an obligation undertaken by Stern on which he could be sued. The omission of information which was to be inserted in the blanks did not, therefore, invalidate the agreement but, at most, merely rendered it ambiguous. In this regard we note the established principle that "any ambiguities caused by the draftsman of the contract must be resolved against that party . . . . [Citations.]" (*Neal* v. *State Farm Ins. Cos.*, 188 Cal. App.2d 690, 695 [10 Cal.Rptr. 781].) We note further that these ambiguities were clarified by the draftsman himself when he completed the terms of the contingent fee contract before the applicable four-year period expired. Moreover, there is nothing in the record to indicate that Stern did not consider himself bound to plaintiff because he did not complete these formalities at the time plaintiff signed the contingent fee form.

▮ Stern further argues that the contingent fee agree-

---

[5]Stern does not argue that he did not "accept" the writing.

ment was not a contract because it did not specifically require him to file suit, to obtain any specific result, or to exercise any particular skill. The thrust of this argument appears to be that the agreement did not include an obligation on which he could be sued. Although it is true that "In order for an action to be based upon an instrument in writing, the writing must express the obligation sued upon. [Citations.]" (*Murphy* v. *Hartford Acc. & Indem. Co.*, 177 Cal.App.2d 539, 543 [2 Cal.Rptr. 325]; *Patterson* v. *Doe*, 130 Cal. 333, 337-338 [62 P. 569]), that requirement is satisfied in the instant case. The obligation undertaken by Stern *was* expressed in the agreement. The form agreement on Stern's letterhead states that "I accept said employment and agree to do all things necessary to prosecute said claim." This obligation is found directly over the portion of the form provided for the attorney's signature. Also, according to the agreement, plaintiff employed Stern to "commence and prosecute such claims" and it can be inferred that this was precisely the employment accepted by the attorney. Accordingly, we perceive no ambiguity or vagueness as to the obligation undertaken since Stern clearly agreed to do all things necessary to *prosecute* the claim.

As an adjunct to this last argument, Stern asserts that the law will not imply into the contract his promises that he will use particular skill or obtain a particular result. In support of this contention he cites *Scrivner* v. *Woodward*, 139 Cal. 314, 316 [73 P. 863] for the proposition that "Promises merely implied by law, and not supported by any express promise or stipulation in the written instrument, do not fall within the provision of section 337, relating to contracts in writing." The quoted rule has no application here for, as the court pointed out in *United States Liability Ins. Co.* v. *Haidinger-Hayes, Inc* *(Cal.App.) 71 Cal.Rptr. 721 "Despite some language to the contrary in earlier cases (cf. *Scrivner* v. *Woodward* (1903) 139 Cal. 314, 316 . . .), it is now settled that '[t]he promise which the law implies as an element of the contract is as much a part of the written instrument as if it were written out.' (*Communale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 662 . . .)" (71 Cal.Rptr. at p. 963) This principle was applied in *Floro* v. *Lawton,* 187 Cal.App. 2d 657 [10 Cal.Rptr. 98], where the court observed on the

---

*A hearing was granted by the Supreme Court on November 27, 1968. The opinion of that court is reported in 1 Cal.3d 586 [83 Cal.Rptr. 418, 463 P.2d 770].

subject of contingent fee contracts that "under the contract, the attorney simply impliedly contracted to exercise a degree of care, skill and knowledge which would . . . be required by the negligence standard." (P. 673.)[6] Such an implied contract to exercise skill on behalf of plaintiff clearly results in the instant case from Stern's undertaking.

▮ Finally, Stern claims that the contingent fee agreement is invalid because it lacks mutuality. He bases this argument on the fact that under the terms of the agreement he was permitted to withdraw from the case if "in his opinion" investigation disclosed no insurance, no liability of defendant, or contributory negligence. Stern contends that the reservation of an absolute right to withdraw based on opinion fails to meet the test of mutuality and renders the contract illusory. Although we cannot agree with this contention. we do take cognizance of the rule that a contract is lacking in mutuality where one party has the right to terminate it at any time at his pleasure. (*R. J. Cardinal Co.* v. *Ritchie,* 218 Cal.App.2d 124, 143 [32 Cal.Rptr. 545].) However, it is equally true that "A contract may contain a valid provision giving one or the other party an option to terminate it on specified conditions." (*Call* v. *Alcan Pac. Co.,* 251 Cal.App.2d 442, 447 [59 Cal.Rptr. 763] ; see *R. J. Cardinal Co.* v. *Ritchie, supra.*)[7] In the instant case the reservation of the right of withdrawal is only on the occurrence of an extrinsic event, that is, the unfavorable results of an investigation. As for the contingency that the "opinion" of Stern would be involved in any withdrawal, we perceive that this provision is analogous to a right to terminate "for cause" or for "good cause," that is, the right must involve an opinion formed upon reasonable grounds and in good faith. (Cf. *R. J. Cardinal Co.* v. *Ritchie, supra,* 218 Cal.App.2d 124, 143-144, 146.)

---

[6]Throughout his argument on the validity of the contract, defendant Stern relies heavily on *Floro.* The case was not concerned with the statute of limitations but involved a suit against an attorney for malpractice in a situation where a contingent fee agreement had been signed. The appellant contended that liability should be predicated on the theory of negligence as well as upon the theory of breach of contract. The court observed that: "It is true that a client can sue on the contract if there is one and upon the theory of negligence, and that is exactly what the appellant did in this case. However, it makes little difference in this instance because, under the contract, the attorneys simply impliedly contracted to exercise a degree of care, skill and knowledge which would in effect be required by the negligence standard." (Pp. 672-673.)

[7]"[I]f th right to cancel is in some way *restricted,* e.g., where a party may cancel for cause, or upon the occurrence of some extrinsic event, or by giving notice for a substantial period of time, consideration will be found." (1 Witkin, Summary of Cal. Law (1960) Contracts, § 77.)

We conclude that the action against Stern for breach of contract was "An action upon . . . [a] contract, obligation or liability founded upon an instrument in writing" within the meaning of the four-year statute of limitations set out in section 337. Consequently, this action was timely filed by Walkup on November 12, 1964, since the four-year period would not have expired before May 5, 1966. Our conclusion in this regard is consistent with the reasoning behind the longer period of limitation. As the court observed in *Amen* v. *Merced County Title Co., supra,* 58 Cal.2d 528 : "A longer period of limitations applies to actions on written contracts than to actions on oral contracts, since the writing is clear evidence in permanent form of the terms of the agreement. [Citations.] When a party has agreed to the writing, there is no reason to invoke the two-year statute of limitations applicable to oral agreements." (Pp. 532-533.)

### The Damages

Stern contends that if he is liable for breach of contract the $7,500 awarded to plaintiff should be reduced by the amount of the contingency fee which he as attorney would have received under the contract if the original personal injury suit had been successfully litigated. He cites no authority which supports this view. In considering this contention we first note that, generally, the measure of damages for breach of contract is that which will compensate the aggrieved party for all the detriment proximately caused thereby (Civ. Code, § 3300; *Canepa* v. *Sun Pac. Inc.,* 126 Cal.App.2d 706, 711 [272 P.2d 860]; *Pacific Scientific Co.* v. *Glassey,* 245 Cal. App.2d 831, 842 [54 Cal.Rptr. 235]); but a person cannot recover damages for breach of a contract in a greater amount than he could have gained by the full performance thereof on both sides. (Civ. Code, § 3358; *Phalanx Air Freight, Inc.* v. *National etc. Freight, Corp.* 104 Cal.App.2d 771, 776 [232 P.2d 510]; *Wickman* v. *Opper,* 188 Cal.App.2d 129, 132 [10 Cal.Rptr. 291].) The rule of Civil Code section 3358 cannot be invoked, however, where there is no showing as to what the performance on both sides would have been. (*Wolfson* v. *Haddan,* 110 Cal.App. 573, 577 [294 P. 772].)

In the instant case we have no way of knowing precisely what amount of damages plaintiff might have gained by full performance on the part of Stern. Investigation on the part of Stern might have uncovered greater damages than those proved to the court in the instant action for breach of con-

tract. Or it is altogether possible that if Stern had proceeded properly under his contract, the matter might have been compromised before the cause was tried. In such a situation he would have received 33⅓ percent under the contract. But if judgment in favor of plaintiff had been obtained, or if the matter had been compromised after the trial began, Stern would have received 40 percent of the amount payable to plaintiff. Clearly there is here no way in which we can ascertain what amount of damages would have been produced by full performance of the contract on both sides. Under the circumstances, therefore, the applicable rule is that which states that one whose wrongful conduct has rendered difficult the ascertainment of damages cannot complain because the court must make an estimate of damages rather than an actual computation. (*Zinn* v. *Ex-Cell-O Corp.*, 24 Cal.2d 290, 297-298 [149 P.2d 177] ; *Pacific Scientific Co.* v. *Glassey, supra,* 245 Cal.App.2d 831, 842; *Steelduct Co.* v. *Henger-Seltzer Co.,* 26 Cal.2d 634, 651 [160 P.2d 804] ; see *Nelson* v. *Reisner,* 51 Cal.2d 161, 171-172 [331 P.2d 17] ; *Stott* v. *Johnston,* 36 Cal. 2d 864, 875-876 [229 P.2d 348, 28 A.L.R.2d 580].) Moreover, in the present case it was not established that Stern performed any part of the contract; nor did he cross-complain or counterclaim for any sums alleged to be due him under the agreement.[8]

The judgments are affirmed. Plaintiff to recover costs on the appeal of defendant Edward Stern. Defendants Walkup, Downing, Wallach and Sterns to recover their costs from plaintiff.

Sims, J., and Elington, J., concurred.

---

[8]Stern also suggests that the damages awarded are excessive but makes no attempt to pursue this argument.