E. Chase Crowley, Appellant, *v.* Laura A. Wolf, Respondent.

Argued May 29, 1939; decided July 11, 1939.

*William S. Bennet, Victor House, Samuel H. Levinkind* and *Edward E. Hoenig* for appellant.

*Julian C. Harrison* and *William E. Reinhardt* for respondent.

Hubbs, J.   Appeal by permission of the Court of Appeals from a judgment of the Appellate Division which unanimously affirmed a judgment of the trial court dismissing the complaint at the end of the plaintiff's case, on the merits.

The action is by an attorney to recover for professional services either the contract price or on *quantum meruit.* The defendant is the surviving spouse of Charles W. Wolf who died October 28, 1931, leaving a will bequeathing to the widow a trust fund of $100,000, a house and its contents valued at $30,052.40; and property in Keene Valley, New York, valued at $23,082.65.   His whole estate as inventoried amounted to approximately $808,000.   However, the deceased had obligated himself on leases, and the payments on these together with other debts of the deceased materially reduced the size of the estate.   The estate was so far cut down that it was apparent that the widow had received under the will more than her intestate share, if the share were figured on net estate and not on the gross estate. On June 7, 1932, before the plaintiff came into the case, the widow exercised her "limited right," under subdivision f of section 18 of the Decedent Estate Law, to take the difference between the aggregate of the provisions made for

her benefit under her husband's will and the amount of her intestate share, the terms of the will otherwise remaining effective. Plaintiff's services were not enlisted until on or about May 3, 1933. The executors, of whom the defendant was one, had managed the business of the deceased and defendant was aware that an attempt would be made by the other beneficiaries to surcharge her with losses due to the running of the business.

On November 26, 1934, plaintiff and defendant entered into a written agreement of retainer as follows: " I, Laura A. Wolf, hereby retain E. Chase Crowley as my attorney to take such proceedings and to conduct such negotiations as in his judgment may be necessary to obtain for me any and all of the property to which I may be entitled by reason of my having exercised my right of election as surviving spouse and against the will of my late husband, pursuant to the provisions of section 18 of the Decedent Estate Law. I am to pay him as full compensation for his services in this connection, twenty five per centum of any and all cash or other property received by me as and for my said elective share, through court proceedings, settlement or otherwise. * * * If I receive no cash or other property as and for my elective share, he is not to be entitled to any compensation whatsoever for services rendered under this agreement."

The plaintiff believed that he had a chance of convincing the courts that the proper interpretation of elective share provisions of the statute was that the share should be determined before the deduction of the amounts payable on debts and expenses; also that the elective share should be figured before the deductions of the amounts of any surcharge against the defendant. It is claimed that these theories are so fantastic that they amount almost to malpractice and that the defendant could not get her money's worth from such a lawyer. Section 18, subdivision 1 (a), of the Decedent Estate Law (Cons. Laws, ch. 13) reads: " In exercising the right of election herein granted a surviving spouse shall in no event be entitled to take more than

one-half of the net estate of the decedent, after the deduction of debts, funeral and administration expenses and any estate tax, and the words ' intestate share ' wherever used in this section shall in no event be construed to mean more than one-half of such net estate." The statute seems to us to be clear but it is possible that plaintiff was justified in giving the advice which he gave. It is doubtless true that there is nothing preventing a lawyer from urging his own interpretation of a statute provided there is any reasonable basis for his interpretation. The rule does not, however, justify an attorney urging in court that black is white all at the expense of his client. Possibly the plaintiff had justification for his construction of the statute and probably acted in good faith.

For over three years the plaintiff worked on this case and carried it through the reference ordered by the Surrogate. The report of the referee was unfavorable, he recommending the dismissal of the defendant's claim to an elective share. Plaintiff's theories were discredited. On November 7, 1936, the plaintiff filed exceptions to the referee's report before the Surrogate and the defendant authorized the plaintiff to argue the exceptions before the Surrogate, but later and on November 9, 1936, she wrote to the plaintiff: " Having been advised that there will not be other objections filed should those filed by you on my behalf, be withdrawn I believe that it is to the best interests of the estate and myself, to do so. As I explained to you, I do not want any further litigation and although I appreciate the fact that you would like and should have an opportunity to present your argument before the Surrogate, I do not feel that I can stand any further court proceedings either before the Surrogate or any referee he may appoint. I certainly do not want to be put on the witness stand again as I fear it would result in a nervous breakdown. My further reason is: that should objections be filed and sustained (1) to the salary I received while managing the business; (2) the losses on the running of the business; (3) to my ' dual capacity ' as executrix and elective share claimant

and result in my removal and loss of commissions, I would probably lose more than I would gain if all the claims made in the elective share proceeding were allowed." The plaintiff took this letter as instructions to withdraw the exceptions and wrote the defendant on November 10, 1936, that he would withdraw the exceptions but would expect her to pay the reasonable value of his services. She wrote back: " I am sorry to have any difficulty with you in regard to my agreement with you, but certainly am surprised that you should claim compensation when the referee has decided the elective share claim cannot be sustained. Both you and Mr. Greeley told me several times that I could withdraw the elective share claim at any time without any loss to me. If you think anything can be accomplished by your good self before the Surrogate which would give you any right to recover any fee from me by arguing the exceptions to the referee's report, I have no objection to your making the argument, provided it be done without delay and for the limited purpose of determining whether or not you have any claim against me under our agreement, and you so state to the Surrogate." Plaintiff answered by letter that he still regarded her first letter as instructions to withdraw the exceptions and that her offer to allow him to argue the exceptions under the terms she mentioned would be impractical and unfair, both as to the merits of the elective share claim and as to his compensation. The action of the plaintiff clearly indicates that he had lost faith in his theory and that he was abandoning his opportunity to convince the Surrogate and thus establish his right under the contract to a contingent fee, hoping doubtlessly that he would be able to recover on a *quantum meruit* on the theory that he had been wrongfully discharged by the defendant, his client.

Assuming, however, that the plaintiff was justified in treating the defendant's letter as a discharge, the question remains whether in the circumstances the discharge was wrongful. A client who employs an attorney on a contract for a contingent fee has an absolute right to discharge the

attorney and will not be liable on *quantum meruit* if the discharge was in good faith, for cause, and not wrongful. At the time defendant wrote the letter the referee had filed his report in which he had held that defendant was only entitled to one-half of the net estate on a claim for her share under the statute. It also appeared that if the surcharges were allowed her elective share would not exceed the amount which she would take under the will. It appeared that she could not succeed and she desired to end the trouble and worry of further litigation. In such circumstances it was not wrongful to decline to go further with the litigation. She was not bound to permit the attorney to continue after she had been convinced by the referee's decision that she had no chance of winning in the end.

" It is quite well settled that where the plaintiff in a case becomes satisfied that his cause of action lacks merit he may discontinue the suit, and surely where a trial of the cause of action has been had, and an adverse judgment rendered, there is no obligation upon the plaintiff to further carry on the litigation simply because his counsel desires to do so. It is not the policy of the law to protract or continue litigation, but when a party to a suit in good faith becomes satisfied that his contention is without merit, and desires to abandon it he must be allowed to do so. (Thornton on Attorneys at Law, § 646; 2 R. C. L. p. 1000.)" (*Ryan* v. *Miller*, 82 W. Va. 490, 491.) The above statement seems to us to be good law and good sense. (Cf. *Andrewes* v. *Haas*, 214 N. Y. 255.)

Where an attorney is hired on a contract, his payment to be a contingent fee, the client has the right to dismiss the attorney any time before the contract by its terms is to expire, and is not liable for the contract price. However, the client is liable for the value of the services rendered if the discharge is wrongful. This contract differs from other contracts in that the attorney may be dismissed at any time without having a cause of action for damages for breach of the contract. The contract is at an end; but the fact that the contract is at an end does not mean that the same rights and

liabilities exist as if the contract had expired by its terms. Where the contract is extinguished by dismissal and not by the expiration of the term named in the contract, the client is liable on a *quantum meruit* unless the dismissal was justified. (*Matter of Tillman*, 259 N. Y. 133; *Matter of Montgomery*, 272 N. Y. 323; *Ferkin* v. *Board of Education*, 278 N. Y. 263; *Andrewes* v. *Haas*, 214 N. Y. 255.) If a discharge is justified there can be no recovery on *quantum meruit*. (*Fletcher* v. *Kellogg*, 6 Fed. Rep. [2d] 476; *Holmes* v. *Evans*, 129 N. Y. 140.)

It seems to us that a holding in the case at bar that plaintiff can recover would be contrary to the right which a client always has to end further litigation when convinced by a decision after trial against him upon the merits. It is true that the decision of the referee appointed by the Surrogate does not have the same effect as a final judgment. Nevertheless it is a decision after trial and if it has the effect of honestly convincing a client that his case is hopeless he should not be compelled to go on in order to afford his attorney an opportunity to earn a fee.

The plaintiff has failed to establish a cause of action and the judgment should be affirmed, with costs.

CRANE, Ch. J., LEHMAN, LOUGHRAN, FINCH and RIPPEY. JJ., concur; O'BRIEN, J., taking no part.

Judgment affirmed.