OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether an attorney may recover upon a cause of action against a former client for fraudulently inducing the attorney to enter into a retainer agreement. The Appellate Division held the cause of action is insufficient as a matter of law and we agree.
In 1972, the City of New York condemned a parcel of land in Queens owned by respondent HGV Associates upon which an amusement park was operated by respondent MHG Enterprises, Inc. Between 1972 and 1976, respondents retained several attorneys to undertake efforts to retain possession of the premises and secure the most advantageous condemnation award. Respondents remained in possession until May 28,1976, when a Federal court ordered them to vacate the premises.
In June, 1976, respondent Glantz, the vice-president of MHG Enterprises, Inc., and a partner in HGV Associates, signed a retainer agreement which provided that appellants, individual attorneys, and a law firm, would prepare an application for a temporary stay of eviction permitting the amusement park to reopen and would represent respondents in the condemnation proceeding. Appellants were to be paid a fixed sum if the application to reopen was successful and their fee in the condemnation proceéding was dependent upon the amount eventually awarded to respondents. Appellants testified that they made it clear to Glantz that they would not work on the application to reopen unless they could also represent respondents in the condemnation proceeding. Glantz agreed to arrange to have appellants substituted as attorneys of record in the condemnation proceeding.
Appellants submitted the application to restore respondents to possession of the amusement park, which was denied. Thereafter, appellants were informed by respondents’ attorney of record in the condemnation proceeding *556 that Glantz had issued instructions not to forward the stipulation of substitution to appellants. Glantz then formally discharged appellants in writing and requested a bill for services rendered.
In October, 1976 appellants commenced an action against respondents for fraud, breach of the retainer agreement, and the reasonable value of legal services rendered. The cause of action for fraud was grounded upon the allegation that appellants were induced to enter the retainer agreement by respondents’ promise to permit them to litigate the condemnation proceeding. Appellants also alleged that from the outset, respondents never intended to substitute appellants as attorneys of record in the condemnation proceedings unless and until the application to reopen was granted.
The trial court dismissed the claim for breach of contract, but upheld the cause of action for fraud. After trial a jury awarded appellants $34,000 as the reasonable value of their services and $310,000 as damages for fraud. The Appellate Division modified the judgment, on the law, by dismissing the cause of action sounding in fraud and otherwise affirmed the judgment insofar as is pertinent here.
The unique relationship between an attorney and client, founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney, remains one of the most sensitive and confidential relationships in our society. A relationship built upon a high degree of trust and confidence is obviously more susceptible to destructive forces than are other less sensitive ones. It follows, then, that an attorney cannot represent a client effectively and to the full extent of his or her professional capability unless the client maintains the utmost trust and confidence in the attorney.
This philosophy engendered the development of the rule, now well rooted in our jurisprudence, that a client may at anytime, with or without cause, discharge an attorney in spite of a particularized retainer agreement between the parties (Matter of Dunn, 205 NY 398; Tenney v Berger, 93 NY 524). Moreover, we have held that since the client has the absolute right on public policy grounds to terminate *557 the attorney-client relationship at any time without cause, it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract, and the attorney discharged without cause is limited to recovering in quantum meruit the reasonable value of services rendered (Matter of Montgomery, 272 NY 323; Martin v Camp, 219 NY 170). In Martin v Camp (supra, p 176) we stated that the rule “is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential”.
To be sure, a deliberate misrepresentation of present intent made for the purpose of inducing another to enter a contract will normally constitute actionable fraud if there is a reliance by the party to whom the misrepresentation was made (Ritzwoller v Lurie, 225 NY 464; Adams v Gillig, 199 NY 314). It is equally well established, however, that a cause of action will not be cognizable in the courts of this State when it is violative of strong public policy (see, e.g., Drago v Buonagurio, 46 NY2d 778).
The public policy of New York which permits a client to terminate the attorney-client relationship freely at any time, notwithstanding the existence of a particularized retainer agreement between the parties, would be easily undermined if an attorney could hold a client liable for fraud on the theory that the client misrepresented his or her true intent when the retainer was executed. When an attorney-client relationship deteriorates to the point where the client loses faith in the attorney, the client should have the unbridled prerogative of termination. Any result which inhibits the exercise of this essential right is patently unsupportable.
Additionally, as a matter of law, the element of reliance essential to a cause of action for fraudulent misrepresentation of present intent (Channel Master Corp v Aluminum Ltd. Sales, 4 NY2d 403) cannot be established in this case. Given the rule that a client may discharge an attorney without cause at any time, it is evident that appellants could not rely upon Glantz’ promise to substitute them as at *558 torneys of record in the condemnation proceeding any more than they could rely upon continued representation in the event thay had actually been substituted. Thus, an essential element of a claim of fraudulent misrepresentation is conspicuously absent.
Appellants argue that the result reached today enables unscrupulous clients to defraud their attorneys with impunity. We do not agree. We have said that “ [t]he law does not permit the client to cheat his attorney” (Matter of Levy, 249 NY. 168, 170). Permitting an attorney improperly discharged to recover the reasonable value of services rendered in quantum meruit, a principle inherently designed to prevent unjust enrichment, strikes the delicate balance between the need to deter clients from taking undue advantage of attorneys, on the one hand, and the public policy favoring the right of a client to terminate the attorney-client relationship without inhibition on the other (Matter of Krooks, 257 NY 329, 332).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order affirmed.