2007 WY 120

**Robert W. HORN and Robert W. Horn, P.C., Appellants (Defendants),**

v.

**Albert WOOSTER and Terrance Duddy, Appellees (Plaintiffs).**

No. 06–195.

Supreme Court of Wyoming.

Aug. 1, 2007.

Representing Appellants: Weston W. Reeves and Anna R. Olson of Park Street Law Office, Casper, Wyoming. Argument by Mr. Reeves.

Representing Appellees: C.M. Aron of Aron & Henning, LLP, Laramie, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] The federal district court for the District of Wyoming certified two questions to this Court concerning how a negligent attorney's contingency fee in the underlying personal injury action should be accounted for in a subsequent malpractice award to his former client. We conclude that, consistent with our damages jurisprudence in other areas of the law, a malpractice plaintiff is entitled to an award in the net amount he would have received under the contingent fee agreement had the underlying action been successful. We decline, however, to recognize a cause of action by an attorney against his negligent co-counsel. Consequently, the answer to the first question is "yes," and the answer to the second question is "no."

## CERTIFIED QUESTIONS

[¶ 2] This Court agreed to answer the following questions certified by the federal district court:

1. Where: (a) Client agrees to a 50% attorney contingent fee in a personal injury [PI] case; (b) Attorney commits malpractice in the PI case, resulting in dismissal of Client's claims prior to trial; (c) Damages are awarded to Client as a result of attorney's malpractice; and, (d) Attorney requests that the damages awarded to Client in the malpractice case be reduced by the 50% contingent fee Attorney would have received in the absence of malpractice in the PI case:

**Question: Should Client's malpractice award be reduced by the contingent fee Attorney would have received absent his malpractice in the personal injury case?**

2. This question is certified only if the answer to No. 1 is yes.

Where Associated Attorney is entitled to share in a contingent fee earned by Principal Attorney in a PI case, and the malpractice award to Client is reduced by the contingent fee Principal Attorney would have received in the absence of malpractice in the PI case:

**Question: Can the Associated Attorney recover the agreed portion of the contingent fee, either as an offset against the contingent fee or as a separate claim against the Principal Attorney?**

## FACTS

[¶ 3] In accordance with Wyoming Rule of Appellate Procedure 11.01, the federal district court set out the nature of the controversy and the facts relevant to our resolution of its certified questions. On September 18, 2001, Mr. Wooster, who is a resident of Maine, was injured when the tractor-trailer

he was driving on Interstate 80 near Rawlins, Wyoming collided head-on with a Carbon County School District No. 1 school bus. The bus driver lost control of the bus and crossed into Mr. Wooster's lane of traffic.

[¶ 4] To recover compensation for his injuries, Mr. Wooster employed Mr. Duddy, an attorney who practiced in Maine. Because Mr. Duddy was not licensed in Wyoming, Mr. Duddy and Mr. Wooster employed Mr. Horn to prosecute Mr. Wooster's claims against the school district in Wyoming. Mr. Wooster and Mr. Horn entered into a contingent fee contract in which Mr. Wooster agreed to pay Mr. Horn fifty percent of any amount he recovered in the personal injury action. In addition, Mr. Horn and Mr. Duddy entered into a separate agreement wherein Mr. Duddy agreed to perform legal services in the personal injury action in return for one-third of Mr. Horn's fifty percent contingent fee.

[¶ 5] Mr. Horn filed the case of *Wooster v. Carbon County School District No. 1,* in the state district court for Carbon County, Wyoming. The state district court granted summary judgment against Mr. Wooster because Mr. Horn had failed to timely file a notice of claim that complied with the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–101, et seq. (LexisNexis 2007), and Article 16, § 7 of the Wyoming Constitution. We affirmed the summary judgment in *Wooster v. Carbon County School Dist. No. 1,* 2005 WY 47, 109 P.3d 893 (Wyo.2005).

[¶ 6] Mr. Wooster and Mr. Duddy subsequently filed a legal malpractice claim in the federal district court for the district of Wyoming against Mr. Horn and his professional corporation. Mr. Wooster sought to recover the damages he would have been awarded in the underlying personal injury action had Mr. Horn performed competently, and Mr. Duddy sought his portion of the contingent fee. The federal district court indicates that our answers to its certified questions may be determinative of some of the parties' claims.

## DISCUSSION

**Question No. 1—Should Client's malpractice award be reduced by the contingent fee Attorney would have received absent his malpractice in the personal injury case?**

[¶ 7] This Court has never had occasion to address how a negligent attorney's contingent fee should be treated in a subsequent malpractice action brought by the client. Other jurisdictions have, however, adopted various theories to address this issue. *See generally,* S. Cohen, *The Deduction of Contingent Attorneys' Fees Owed to the Negligent Attorney From Legal Malpractice Damage Awards: The New Modern Rule,* 24 Tort & Ins. L.J. 751 (1989); John E. Theuman, *Measure and Elements of Damages Recoverable for Attorney's Negligence in Preparing or Conducting Litigation—Twentieth Century Cases,* 90 A.L.R.4th 1033, § 14 (1991). Historically, a negligent attorney was entitled to deduct from a subsequent malpractice award the amount he would have been entitled to as a contingent fee in the underlying action. *See, e.g., Childs v. Comstock,* 69 A.D. 160, 74 N.Y.S. 643, 649 (1902), disagreed with by *Andrews v. Cain,* 62 A.D.2d 612, 406 N.Y.S.2d 168 (1978); *Moores v. Greenberg,* 834 F.2d 1105 (1st Cir.1987); *Sitton v. Clements,* 385 F.2d 869 (6th Cir. 1967) (affirming malpractice award reflecting a deduction for the attorney's contingent fee although the appropriateness of the deduction was not specifically discussed); *McGlone v. Lacey,* 288 F.Supp. 662 (D.S.D.1968) (recognizing deduction rule but deciding case on the basis that the attorney owed no duty to the plaintiff because no attorney/client relationship existed between the parties). The cases held the deduction was warranted so the judgment would accurately reflect the amount the client would have recovered if the attorney had not committed malpractice and the client's action had been successful. *See Childs,* 74 N.Y.S. at 649. *See also,* Cohen, *supra,* at 753–56.

[¶ 8] In the latter part of the twentieth century, some courts began to rule a negligent attorney is not entitled to such a deduction. *See,* Cohen, *supra,* at 756–759. According to Cohen, *supra,* at 756, *Benard v. Walkup,* 272 Cal.App.2d 595, 77 Cal.Rptr. 544 (1969), was the first reported decision to deny the deduction. Responding to the specific facts presented in that case, the court

noted the amount of fee owed to the attorney was uncertain because the retainer agreement included a sliding scale contingent fee, with the fee increasing as the litigation progressed. *Id.* at 551. Because of the flexibility in the fee, the court stated: "Clearly there is . . . no way in which we can ascertain what amount of damages would have been produced by full performance of the contract on both sides." *Id. See also, Andrews,* 406 N.Y.S.2d at 169. Moreover, the attorney's negligence in that case resulted from his failure to file an action before the statute of limitation expired and the court remarked that there was no evidence that the attorney had performed any part of his agreement. *Benard,* 77 Cal.Rptr. at 546, 551. On those facts, the *Benard* court refused to deduct the negligent attorney's contingent fee in the underlying case from the client's malpractice award. *Id.* at 551.

[¶ 9] Other courts have answered the contingent fee issue by simply stating that a negligent attorney should not benefit from shoddy or negligent work. *See, e.g., Campagnola v. Mulholland, Minion & Roe,* 76 N.Y.2d 38, 556 N.Y.S.2d 239, 555 N.E.2d 611, 614–15 (1990); *McCafferty v. Musat,* 817 P.2d 1039, 1045 (Colo.Ct.App.1990), as modified on denial of rehearing (1991); *Strauss v. Fost,* 213 N.J.Super. 239, 517 A.2d 143, 145 (Ct.App.1986) (stating it rested its "decision upon the proposition that a negligent attorney in the appropriate case is not entitled to recover his legal fees."). Other decisions focus on the "case within a case" nature of a malpractice action. *See, e.g., Andrews,* 62 A.D.2d at 613, 406 N.Y.S.2d 168; *Carbone v. Tierney,* 151 N.H. 521, 864 A.2d 308, 319–20 (2004). In order to prevail in the malpractice case, the client must employ another attorney to prove the underlying action would have been successful and also prove the first attorney's negligence. Thus, some courts hold that deduction of the first attorney's contingent fee from the malpractice award is not appropriate because the client incurred a second attorney's fee in prosecuting the mal-

practice case. *See Andrews,* 62 A.D.2d at 613, 406 N.Y.S.2d 168; *Carbone,* 864 A.2d at 319–20. These decisions state that the benefit the client gets from not having the negligent attorney's contingent fee deducted from his malpractice award is "canceled out" by the fee the client incurred in prosecuting the malpractice action. *See, e.g., McCafferty,* 817 P.2d at 1045; *Winter v. Brown,* 365 A.2d 381, 386 (D.C.Ct.App.1976); *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 695–96 (Minn.1980), citing with approval dicta in *Christy v. Saliterman,* 288 Minn. 144, 179 N.W.2d 288, 306–07 (1970). Employing a related, though somewhat different, rationale, some courts have held that the client may recover his attorney's fee in the legal malpractice action as a consequential or incidental damage resulting from his attorney's negligence.[1] *Foster v. Duggin,* 695 S.W.2d 526, 527 (Tenn.1985).

[¶ 10] In resolving the question of how, in Wyoming, a malpractice plaintiff's damages should be calculated, we begin with a review of our precedent regarding legal malpractice in general. The elements of a legal malpractice claim are: the existence of a duty arising from the attorney/client relationship; the accepted standard of legal care; and the departure by the attorney from the standard of care which causes harm to the client. *Gayhart v. Goody,* 2004 WY 112, ¶ 16, 98 P.3d 164, 169 (Wyo.2004); *Moore v. Lubnau,* 855 P.2d 1245, 1248 (Wyo.1993). These elements reveal the hybrid nature of a legal malpractice claim. *Long–Russell v. Hampe,* 2002 WY 16, ¶ 11, 39 P.3d 1015, 1019 (Wyo.2002). Although the standard of care element reflects the law of torts, *Moore,* 855 P.2d at 1248–49, we have consistently held the legal relationship between an attorney and his client is contractual in nature. *Jackson State Bank v. King,* 844 P.2d 1093, 1095 (Wyo.1993). Thus, "[e]ven though legal malpractice may be attributable to negligence on the part of the attorney, . . . the right to recompense is based upon the breach of the contract with the client." *Id.* at 1096. *See*

*also, Kolschefsky v. Harris,* 2003 WY 86, ¶ 9, 72 P.3d 1144, 1146 (Wyo.2003).

[¶ 11] In *Long–Russell,* we considered the types of damages available in legal malpractice cases. Relying on a Minnesota Supreme Court case, *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557, 560–62 (Minn.1996), we stated that, in most cases, the tort and breach of contract aspects of a legal malpractice case are interrelated. Answering the specific question presented, we ruled that an aggrieved client generally may not recover damages for emotional distress resulting from his attorney's negligence. " 'In general, extra-contractual damages, including those for emotional distress, are not recoverable for breach of contract except in those rare cases where the breach is accompanied by an independent tort.' " *Long–Russell,* ¶ 11, 39 P.3d at 1019, quoting *Lickteig,* 556 N.W.2d at 560–62. In order to recover for an independent tort, the attorney's conduct must have been willful. *Id.* at 1020. We summarized our ruling as follows:

> "We therefore hold that, as in other negligence actions, emotional distress damages are available in limited circumstances. There must be a direct violation of the plaintiff's rights by willful, wanton or malicious conduct; mere negligence is not sufficient. Here, in the absence of an allegation or proof on these essential elements, the award of emotional distress damages was improper."

*Id.,* quoting *Lickteig,* 556 N.W.2d at 560–62 (footnotes omitted).

[¶ 12] Thus, our precedent establishes that, in absence of willful conduct, the damages recoverable for legal malpractice are those typically available for breach of contract. In an action for breach of contract, the damages award is designed to put the plaintiff in the same position as if the contract had been performed, less proper deductions. *JBC of Wyo. Corp. v. City of Cheyenne,* 843 P.2d 1190, 1195 (Wyo.1992). *See also, Ruby Drilling Co. v. Duncan Oil Co.,* 2002 WY 85, ¶ 26, 47 P.3d 964, 973 (Wyo. 2002). Proper deductions from a breach of contract damages award include the expenses the plaintiff would have incurred as part of full performance of the contract. *See id. See also, Ekberg v. Sharp,* 2003 WY 123, ¶¶ 16, 20, 76 P.3d 1250, 1255–56 (Wyo.2003) (approving deduction of expenses incurred by defendant in maintaining property awarded to plaintiff). *Robert W. Anderson Housewrecking and Excavating, Inc. v. Board of Trustees, School Dist. No. 25, Fremont County,* 681 P.2d 1326, 1332–33 (Wyo.1984), illustrates this principle. In that case, we approved an award of damages in the amount of the net profit a contractor would have earned if the school district had not breached an agreement for the contractor to demolish a building. *Id.*

[¶ 13] Furthermore, characterization of the action as arising in contract or tort does not materially change the damages analysis. The damages available in a tort case involving a loss of business opportunity[2] are similar to breach of contract damages. In such cases, the proper measure of damages is not the gross revenues expected from the transaction, but the plaintiff's net loss, after deduction of appropriate expenses. *See, e.g., Exotex Corp. v. Rinehart,* 3 P.3d 826, 830 (Wyo.2000); *Wagon Wheel Village, Inc. v. Harris,* 993 P.2d 323, 326 (Wyo.1999). Similarly, other courts have described damages in a legal malpractice case as being the client's actual loss as " 'measured by the judgment the plaintiff lost in the underlying action.' " *Carbone,* 864 A.2d at 319, quoting *Kituskie v. Corbman,* 552 Pa. 275, 714 A.2d 1027, 1030 (1998).

[¶ 14] In a well-reasoned decision, the First Circuit discussed the legal theories utilized by other courts in deciding whether a negligent attorney was entitled to an offset, in the amount of his contingent fee, against the malpractice award. *Moores,* 834 F.2d 1105. The *Moores* court stated that, in a negligence action, the plaintiff is entitled to recover " 'only those damages which [were] a

---

**2.** While not precisely similar, a contingency fee agreement is analogous to a "business opportunity" in that the attorney and the client agree to pursue the client's claim with the understanding that if the effort is successful they will share the judgment in an agreed upon fashion, but if it is not, the attorney will not receive a fee.

foreseeable consequence of [the] defendant's negligence.' " *Id.* at 1109, quoting *Stubbs v. Bartlett,* 478 A.2d 690, 693 (Me.1984). The foreseeable damages would only include the **net** proceeds from any judgment in the underlying personal injury action. *Moores,* 834 F.2d at 1109 (emphasis added). The court also recognized that the damages in a contract action, i.e. the amount which would place the plaintiff in the position he would have enjoyed had there been no breach, would be very similar to the damages foreseeable in a negligence action. *Id.* at 1110.

[¶ 15] Applying these principles, an aggrieved client should be entitled to recover from the negligent attorney the amount he would have expected to recoup if his underlying action had been successful. It would, therefore, be appropriate to deduct the attorney's contingency fee from the amount the jury determines the underlying judgment would have been because the client's ultimate recovery in the underlying action would have been reduced by that expense. The approach holding that a client is not responsible for the expenses of successful completion of the attorney/client contract is inconsistent with the principles we typically apply in determining compensatory damages. *See, Alexander v. Meduna,* 2002 WY 83, ¶ 36, 47 P.3d 206, 217–18 (Wyo.2002).

[¶ 16] The courts that have refused to allow the deduction do not explain their rationale in the context of typical damages analyses. Instead, some courts simply state that the attorney is precluded from deducting his contingent fee because he was negligent. *See, e.g., McCafferty,* 817 P.2d at 1045; *Campagnola,* 556 N.Y.S.2d 239, 555 N.E.2d at 614. One could also argue that the contingent fee contract provided the attorney would only receive a fee if the case was successful, the case was not successful because of the attorney's negligence, *ergo* the contingency fee should not be deducted. However, either of those approaches, ignores, and is inconsistent with, the fact that compensatory damages are calculated as if the attorney had not been negligent and the underlying action was successful. Assuming the fiction of a successful case as we must, it is only logical that the ultimate recovery would be calculated by deducting the reasonable expenses associated with obtaining a favorable judgment.

[¶ 17] By refusing to deduct the contingent fee from the malpractice award simply because the attorney was negligent, the courts appear to be punishing the attorney for his negligence rather than compensating the client for his loss. *See, Moores,* 834 F.2d at 1110–11. Indeed, some courts seem apologetic because a member of their profession acted negligently and appear to want to avoid any possible inference that they did not deal severely enough with the negligent acts of one of their own. *See, e.g., Campagnola,* 556 N.Y.S.2d 239, 555 N.E.2d at 614; *McCafferty,* 817 P.2d at 1045.

[¶ 18] The *Moores* court rejected the theory that a plaintiff in a legal malpractice action should be entitled to a greater award than a plaintiff in any other type of case. *Moores,* 834 F.2d at 1110–11. It could identify no legal reason to deny an attorney a deduction from the award against him for appropriate expenses, including the legal fees which would have been owed by the client, when similar deductions would be available to defendants in other cases. *Id. See also,* David A. Barry, *Legal Malpractice in Massachusetts: Recent Developments,* 78 Mass. L.Rev. 74, 82 (1993) (advocating allowing the contingent fee deduction from a subsequent malpractice award because "the client should only be entitled to recover the amount he would have obtained in the underlying matter absent the lawyer's malpractice").

[¶ 19] While we do not believe that attorneys should be treated more favorably than any other class of negligent defendants, we think they are entitled to equal treatment. *See Moores,* 834 F.2d at 1110–11. The cases which rule that a negligent attorney should not "collect" for negligent or shoddy work focus on the wrong question. The ultimate question is not whether the attorney is entitled to "collect" his fee, but what amount the client is entitled to receive as damages for his loss. "The objective and office of damages is to compensate for loss." *Douglas Reservoirs Water Users Ass'n v. Cross,* 569 P.2d 1280, 1284 (Wyo.1977). The theory that a negligent attorney should not "collect" a fee for his shoddy work improper-

ly takes the focus off the correct question—what the injured client has lost and is entitled to recover. The *Moores* court spoke to this issue:

> Restricting the client's recovery in a ... malpractice action to the realizable net proceeds from his earlier case does not allow a culpable attorney to "collect" anything. More importantly, the argument to the contrary overlooks that the fundamental purpose of such damages is to compensate a plaintiff, not punish a defendant.

*Moores*, 834 F.2d at 1111. Concentrating on the question of what the client lost as a result of the attorney's negligence requires the deduction of all expenses which the client would have incurred in order to successfully prosecute his claim, including the attorney's fee expense. This rationale focuses on compensating the client rather than punishing the negligent attorney.[3]

[¶ 20] We, therefore, reject a general rule that a client may recover more than he lost simply because the defendant was an attorney who was negligent in performance of his duties. Instead, the well-accepted principles for calculation of damages in both contract and tort cases should be applied and the plaintiff should receive an award that would place him in the same position he would have enjoyed had the negligence not occurred.

[¶ 21] Some courts rely upon the fact that the plaintiff had to pay fees to his attorney in the malpractice action as justification for a gross, rather than net, malpractice award. This approach confuses two separate and distinct issues: 1) what damages the client incurred, and 2) whether a client should be responsible for his attorney's fees in the malpractice action. As we explained above, with regard to the first issue, there is no legal rationale for granting the plaintiff damages in excess of what he would have obtained if the underlying action had been successful.

[¶ 22] Turning to the second issue, we have clear authority regarding a prevailing party's right to collect attorney's fees from his opponent. In Wyoming, we apply the American rule which holds that each party is generally responsible for his own fees and costs. *See, e.g., Rock Springs Land and Timber, Inc. v. Lore*, 2003 WY 100, ¶ 37, 75 P.3d 614, 628 (Wyo.2003). A prevailing party is only entitled to be reimbursed for his attorney's fees when express statutory or contractual authorization exists for such an award, or in circumstances involving fraud and a corollary award of punitive damages. *McNeill Family Trust v. Centura Bank*, 2003 WY 2, ¶ 32, 60 P.3d 1277, 1289 (Wyo. 2003) quoting *Alexander*, ¶ 49, 47 P.3d at 220–21 (citations omitted). In our view, refusing a deduction for the contingent fee on the basis that the second fee cancels out the first, or allowing an award as consequential or incidental damages of the malpractice, is inconsistent with the American rule. We see no reason for creating an exception to the American rule when legal malpractice is involved, and, in fact, believe such an exception would undermine the rule because in any litigation it could be argued the plaintiff is harmed because of the need to pay attorney's fees to pursue his or her legal rights. *See also Moores*, 834 F.2d at 1111.

[¶ 23] In a more recent trend, some courts have ruled that a negligent attorney is not entitled to a deduction of his contingent fee from a malpractice award against him but, utilizing a *quantum meruit* theory, may be entitled to a deduction for the value of his services which benefited the client. *See* Cohen, *supra*, at 759–762; *Foster*, 695 S.W.2d at 527; *Strauss*, 517 A.2d at 145; *Schultheis v. Franke*, 658 N.E.2d 932, 940–41 (Ind.Ct. App.1995). Cohen advocates using a *quantum meruit* rule of recovery to reconcile the conflicting lines of authority.

> *Quantum meruit* recovery would appear to reconcile the facially opposed policies of both cases that deduct and cases that refuse to deduct attorneys' fees from legal malpractice damage awards. Cases de-

---

3. In addition to compensatory damages, punitive damages may be available to a wronged client if the attorney's misconduct involved more than simple negligence and was, instead, outrageous, malicious, and/or willful and wanton. *Alexander v. Meduna*, 2002 WY 83, ¶ 41, 47 P.3d 206, 218–19 (Wyo.2002). "Punitive damages are not intended to compensate the plaintiff; instead, punitive damages are awarded to punish the defendant and deter others from such conduct in the future." *Id.* at ¶ 40, 47 P.3d at 218.

ducting such fees desire to avoid a windfall to the former client where, because of the negligence of the attorney in the underlying case, the ex-client and now malpractice plaintiff gets free legal services. *Quantum meruit* recovery would permit the former attorney to recover fees for any benefits provided to the former client as a result of the now terminated attorney-client relationship. At the same time, there is no risk of the client's receiving a windfall of free attorney time and effort because of the necessity of providing to the court hosting the legal malpractice claim the validity of the underlying claim and its value. The requirement of the "case within a case" in legal malpractice forces the client to hire an attorney to prove whatever portions of the underlying case that were not already completed by the attorney discharged for negligence.

*Quantum meruit* recovery would also meet the concerns of the courts that refuse to deduct attorneys' fees from legal malpractice damage awards. The concern that the attorney has not earned the fee is directly rebutted by the *quantum meruit* recovery rule. Under a *quantum meruit* recovery, fees are only deducted from the damage award for legal services that actually benefited the client.

*Quantum meruit* recovery also better addresses the burden on former clients, now legal malpractice plaintiffs, of pursuing the legal malpractice action. In the past it was assumed that whatever legal fees were charged in the underlying case would offset the fees from the legal malpractice case. However, no comparison of the two fees was attempted.

*Quantum meruit* recovery, in comparison, would better match actual costs for processing each case with potential recoveries. If the attorney being sued for legal malpractice did very little work that benefited the client, such as in the case of a claim that was time barred by the statute of limitations, then almost all fees should be recovered by the legal malpractice attorney. If the attorney being sued for legal malpractice did a substantial amount of work, such as completely trying the case to a verdict, then attorney's fees would

have to be awarded to both the attorney being sued for legal malpractice and the legal malpractice attorney.

Cohen, *supra*, at 761–62.

[¶ 24] The *quantum meruit* approach is attractive upon first glance because it seems to be a reasonable compromise between refusing to recognize, altogether, the attorney's fee as an expense of litigation in a malpractice award and allowing a deduction from the malpractice award for the negligent attorney's full fee. However, we conclude that actual application of the theory would add unworkable complications to an already complicated case. The elements of *quantum meruit*, or unjust enrichment, are: 1) valuable services were rendered; 2) to the party to be charged; 3) which services were accepted, used and enjoyed by the charged party; and 4) under circumstances that reasonably notified the party being charged that the other party would expect payment for the services. Recovery is appropriate only when the benefited party would be unjustly enriched. *Jacoby v. Jacoby*, 2004 WY 140, ¶ 10, 100 P.3d 852, 855–56 (Wyo.2004).

[¶ 25] The initial inquiry, then, would be to determine what services rendered by the first attorney were "valuable" to the client. Making that determination would be very difficult because it necessarily must be done in "hindsight" and in the context of the malpractice case rather than the original personal injury action. For example, how would a jury determine the "value" to the client of each item of discovery found by the first attorney? As every attorney knows, the discovery process usually results in some worthwhile evidence and other information that is, ultimately, useless to the action. What standard will the jury use to determine if the work was "valuable?" Will the attorney only be credited for the work he did to uncover the worthwhile evidence when any other reasonable attorney would have undertaken the same steps which resulted in the useless information, as well? Will one deposition be considered valuable while another is not? Will individual interrogatories be subject to scrutiny as to whether or not they revealed evidence which actually benefited the client?

How will these services be valued when, in a typical contingent fee case, the attorney does not keep track of the hours he works on individual aspects of the case? When viewed in this light, it is clear that trying a legal malpractice case using a *quantum meruit* approach to calculate damages would be incredibly difficult because the facts will present nearly unlimited opportunities for the client to second-guess the first attorney's tactics and work product. *See Carbone*, 864 A.2d at 320, (rejecting *quantum meruit* approach because "[w]e think, as a practical matter, that it would be difficult for a jury to assign a value to the services provided by the first lawyer, particularly where there is considerable disagreement about whether those services benefited the client in any meaningful way").

[¶ 26] The *quantum meruit* theory is also subject to criticism because it ignores the original agreement between the client and the negligent attorney. Had they wanted to, the parties could have agreed to a fee structure based upon an hourly rate. The client, however, did not want to have to pay for the attorney's services if the personal injury action was not successful; consequently, he hedged his bets by entering into the contingent fee arrangement.

[¶ 27] Wyoming legal ethics rules specifically allow contingent fee agreements in personal injury actions.[4] *See*, Wyoming Rules of Professional Conduct for Attorneys at Law, Rule 1.5; Rules Governing Contingent Fees for Members of the Wyoming State Bar, Rules 1 through 6. The contingent fee arrangement is different from the typical way a professional is compensated for his services. Most professionals are compensated on an hourly basis, e.g., engineers and attorneys in standard cases, or by a set fee for performance of a particular procedure or project, e.g., physicians and architects. In contrast to the contingent fee arrangement for legal services, other professionals typically do not agree to forego all compensation until the end of a large project or make their entire fee contingent upon a certain outcome. It is, therefore, difficult to find situations analogous to the contingent fee arrangement. Because of these unique circumstances, it is important to give effect to the fee arrangement freely negotiated by the attorney and client prior to their dispute.[5]

[¶ 28] We hold that Mr. Wooster is entitled to damages that would put him in the same position he would have enjoyed had he been successful in the underlying action. In this contingent fee situation, Mr. Horn's fee should be deducted from what the jury determines the underlying judgment in favor of Mr. Wooster would have been. Our ruling is consistent with our damages jurisprudence in other areas of the law and honors the agreement the attorney and client originally executed. Consequently, we answer the first certified question in the affirmative.[6]

**Question No. 2—Can the Associated Attorney recover the agreed portion of the contingent fee, either as an offset against the contingent fee or as a separate claim against the Principal Attorney?**

4. The fact that contingent fees are appropriate in personal injury actions distinguishes them from cases where contingent fees are considered unethical, such as divorces and criminal actions. *See* Rules of Professional Conduct for Attorneys at Law, Rule 1.5(d); Rules Governing Contingent Fees for Members of the Wyoming State Bar, Rule 3. *See also, Morfeld v. Andrews*, 579 P.2d 426 (Wyo.1978) (holding that the contingent fee agreement signed by the attorney and his client in a divorce case was invalid, but the attorney was entitled to payment, under a *quantum meruit* theory, for the reasonable value of his services).

5. The dissent advocates for adoption of quantum meruit to value the services provided by the first attorney and argues that the *Moores* case, upon which we rely, was actually a quantum meruit case. The *Moores* passage quoted by the dissent pertaining to the amount of work performed by the first attorney was simply an attempt to distinguish the rationale employed in *Benard*, the seminal case denying the deduction. The *Moores* decision did not include any quantitative analysis of the work performed by the first attorney but, instead, simply approved a deduction from the malpractice award in the amount of the agreed upon contingent fee.

6. Although the certified question infers that the court will make the contingent fee deduction, as a matter of law, from the amount awarded in the jury's verdict, we note that task could be left to a properly instructed jury. *See Moores*, 834 F.2d at 1109.

[¶ 29] Mr. Duddy and Mr. Horn entered into a separate agreement whereby, upon successful completion of Mr. Wooster's personal injury case, Mr. Duddy was to be paid a fee in the amount of one-third of Mr. Horn's fifty percent contingent fee.[7] In the legal malpractice action, Mr. Duddy apparently asserted a claim against Mr. Horn for the fee he lost because of Mr. Horn's negligence in handling Mr. Wooster's governmental claim. Despite the wording of the certified question, Mr. Duddy stated in his submissions to this Court that any benefit arising from his claim will inure to Mr. Wooster because it will simply be credited against the reduction for Mr. Horn's contingent fee. In other words, Mr. Duddy's fee will be subtracted from the contingent fee deduction in order to increase the award to Mr. Wooster.

[¶ 30] The plaintiffs do not cite any authority to support their position that an attorney should be allowed to maintain an action against his co-counsel for negligence in prosecuting the underlying personal injury action. In contrast, Mr. Horn cites to cases which patently reject the proposition. In *Mazon v. Krafchick*, 158 Wash.2d 440, 144 P.3d 1168 (2006) (en banc), the Washington Supreme Court considered a case similar to the case here. Two attorneys co-represented a client in a personal injury action and one of the attorneys failed to have the defendant served with the complaint in a timely fashion. *Id.* at 1169–70. Consequently, the statute of limitations expired and the client lost his claim. *Id.* The client sued both attorneys for malpractice and received a substantial settlement from the attorneys' insurance carrier.

*Id.* at 1170. After the malpractice suit settled, the non-negligent attorney sued the other, "seeking to recover for the loss of his expected contingency fee,[8] for the amount his insurance company paid to settle the client's lawsuit, for his out of pocket insurance deductible, and for the costs he advanced in the client's lawsuit." *Id.* (footnote added).

[¶ 31] The Washington Supreme Court adopted a bright-line rule refusing to recognize a cause of action by one attorney against his negligent co-counsel. The court held "no duties exist between co[-]counsel that would allow recovery for lost or reduced prospective fees." *Id.* at 1172. The court relied on a California case, *Beck v. Wecht*, 28 Cal.4th 289, 121 Cal.Rptr.2d 384, 48 P.3d 417 (2002), in holding it would violate public policy to allow co-counsel to sue one another in malpractice. *Id.* at 1171–73. Because both attorneys owe their client an undivided duty of loyalty, recognizing an independent duty between the attorneys could undermine the fiduciary duty owed to the client. *Id.*

[¶ 32] In addition, the California court made the following pertinent observations:

Public confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit.... Considerations of public policy support the conclusion that an attorney's duty of undivided loyalty to his client should not be diluted by imposing upon him obligations to the client's [other] attorney[.]

*Id.* at 421.

[¶ 33] The plaintiffs try to make Mr. Duddy's claims more palatable than the

---

7. The Rules of Professional Conduct for Attorneys at Law govern the appropriate fee relationships between attorneys from different law firms. Rule 1.5 states, in relevant part:

 * * * *

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer and, each lawyer assumes joint responsibility for the representation;

(2) the client is informed of the arrangement; and

(3) the total fee is reasonable.

(f) A lawyer shall not pay or receive a fee or commission solely for referring a case to another lawyer.

8. Interestingly, the opinion suggests the settlement amount reflected a deduction for the attorneys' contingent fee. The case settled for $1.3 million, and the non-negligent attorney sought to recoup $325,000 for the contingent fee he lost as a result of the other attorney's negligence. Footnote 2 explained the requested amount as follows:

The math supporting this amount proceeds as follows, according to [the plaintiff]: [the client] received a $1.3 million net recovery. A judgment of $1.95 million results in a $1.3 million recovery. Therefore, the 1/3 contingency fee is $650,000; ½ of which is $325,000.

*Mazon*, 144 P.3d at 1170, n. 2.

typical case where one attorney is seeking to recover from his negligent co-counsel by arguing Mr. Duddy is only seeking an offset for Mr. Wooster against Mr. Horn's contingent fee deduction rather than an independent award to himself. Certainly, that stance addresses some of the concerns about the attorneys' fidelity to the client. However, when viewed objectively, it is clear that this argument attempts to accomplish the same result we just rejected in answering the first question, i.e. disallowing the deduction of part of the contingent fee from the malpractice award. Furthermore, it would not prevent unseemly squabbling between attorneys that could erode the public's confidence in the legal system as feared by the *Beck* court.

[¶ 34] To adopt a cause of action between co-counsel simply because the attorney proposed to give the client the benefit of any judgment in his favor would not square with our other precedent and could, in the future, result in a case where the client's best interests are compromised by the self interests of feuding attorneys. Consequently, we answer the second certified question in the negative.

## CONCLUSION

[¶ 35] We decline to adopt a means of measuring damages in legal malpractice actions that is different from other areas of the law. We conclude that the malpractice client is only entitled to a judgment which reflects the net recovery he would have received had the underlying action been successful. In addition, we refuse to recognize a cause of action in favor of an attorney against his negligent co-counsel. We answer the first certified question in the affirmative and the second in the negative.

BURKE, J., files a dissenting opinion.

BURKE, Justice, dissenting.

[¶ 36] I respectfully dissent because I do not believe it is appropriate to adopt a rigid rule allowing deduction of the attorney's contingent fee percentage in all legal malpractice cases. The deductibility of those fees should be tied to the benefit that the client received from the attorney's efforts. Where

the client has received no benefit, no deduction should be allowed.

[¶ 37] As noted by the majority, the issue presented is one of first impression for this Court. Understandably, the majority seeks guidance from other jurisdictions, and it relies upon several cases from other jurisdictions as support for its decision. Such reliance is misplaced. The majority's interpretation of *Moores v. Greenberg*, 834 F.2d 1105 (1st Cir.1987), which serves as the lynchpin of the majority's analysis, is illustrative.

[¶ 38] The majority describes the *Moores* case as "well-reasoned" and as standing for the proposition that the attorney's contingent fee should be deducted in all cases in calculating a client's damages. Upon examination, however, it becomes readily apparent that the *Moores* court did not hold that attorney fees should be deducted in all cases. In *Moores*, the alleged malpractice consisted of the attorney's failure to convey a $90,000 settlement offer to Plaintiff. After Plaintiff lost at trial, Plaintiff sued his attorney claiming that he would have accepted the offer if he had known about it. The *Moores* court allowed deduction of the 1/3 contingent fee. There was no dispute that the settlement offer resulted from the efforts of the attorney. The *Moores* court noted, however, that the case might have been decided differently if the attorney had performed no services that benefited the client. The court stated:

> The case before us, however, is altogether different. There was nothing uncertain or problematic about Greenberg's fee. The amount of the gross recovery was fixed: had the lawyer not breached his duty, $90,000 would have been paid. This is a far cry from cases like *Andrews v. Cain*, [62 A.D.2d 612, 613, 406 N.Y.S.2d 168, 169 (1978)] where the attorney failed to file suit—leaving up in the air the question of how much money, *if any*, his client would have recovered. *See also Duncan v. Lord*, [409 F.Supp. 687, 691–92 (E.D.Pa. 1976)] (similar; case involuntarily dismissed for want of prosecution due to counsel's laggardness in answering interrogatories). And the fee arrangement between Moores and Greenberg—a straight one-third—was equally definite; had the

offer been communicated and accepted, counsel's recompense would have been $30,000. This contrasts sharply with cases such as *Andrews,* where the court believed "it was impossible to determine what the deduction from plaintiff's award would have been." 406 N.Y.S.2d at 169.

There is another important line of demarcation as well. Many of the cases hawked by *Moores,* typically ones in which a lawyer neglected to sue before a temporal deadline expired, stress the fact that the attorney-defendant had furnished no services to his client. *E.g., Andrews,* 406 N.Y.S.2d at 169; *Benard,* 77 Cal.Rptr. at 551 (defendant had "not established that [the lawyer] performed any part of the contract"). These "do-nothing" cases are also distinguishable. Where a lawyer accepts an engagement and thereafter fails to show up at the starting gate, *e.g., id.* (failure to file suit within statute of limitations); *Winter v. Brown,* 365 A.2d 381 (D.C.1976) (failure to serve mandatory notice of claim within prescribed period), it is arguably equitable to fix damages without regard to a fee entitlement which would only have come into existence had the lawyer performed the contract. Those rough equities are in a different balance, however, where the lawyer—notwithstanding that he was guilty of some breach of duty—actually did the work. And the difference in the equities is heightened in a case like this one, where the sum in dispute—the $90,000 offer—arose during the trial, presumably in direct response to Greenberg's labors on his client's behalf. *Cf. Strauss v. Fost,* 517 A.2d at 145 ("We can envision cases where on a *quantum meruit* basis the efforts of a defendant attorney may have so benefited ... a plaintiff ... that it would be unfair to deny" the deduction); *Foster v. Duggin,* 695 S.W.2d at 527 ("in an appropriate case, the attorney may be entitled to credit for expenses ... which ultimately benefitted the client").

*Id.,* 834 F.2d at 1112–13 (emphasis in original).

[¶ 39] The majority believes that *Moores* allows the deduction of attorney's fees in all legal malpractice cases, and observes that this is consistent with the typical rule for recovering breach of contract damages. As noted above, however, I believe that *Moores* supports a more flexible rule. Additionally, courts that have specifically considered applying a typical contract damages analysis to contingent fees in malpractice cases have rejected that approach because of the special nature of the attorney-client relationship.[1] As one court noted:

We conclude that a reduction of the client's recovery should not be allowed in this case and for reasons of public policy, we decline to apply the traditional rules of contract damages to permit a negligent attorney to obtain credit for an unearned fee.

As we not too long ago observed, "[t]he unique relationship between an attorney and client, founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney, remains one of the most sensitive and confidential relationships in our society." (*Demov, Morris, Levin & Shein v. Glantz,* 53 N.Y.2d 553, 556[, 444 N.Y.S.2d 55, 428 N.E.2d 387]). Because of the role attorneys play in the vindication of individual rights in our society, they are held to the highest standard of ethical behavior (Code of Professional Responsibility, Preamble; EC 6–5). Yet without this relationship of trust and confidence an attorney is unable to fulfill this obligation to effectively represent clients by acting with competence and exercising proper care in the representation. (*Demov, Morris, Levin & Shein v. Glantz,* 53 N.Y.2d, at 556[, 444 N.Y.S.2d 55, 428 N.E.2d 387], *supra* ).

Because of the uniqueness of the attorney-client relationship, traditional contract principles are not always applied to govern disputes between attorneys and clients. Thus it is well established that notwith-

---

1. Indeed, while the majority does not explicitly say so, in fact it relies almost entirely on the unique nature of the attorney-client relationship to answer the second certified question in the negative.

standing the terms of the agreement between them, a client has an absolute right, at any time, with or without cause, to terminate the attorney-client relationship by discharging the attorney. (*Shaw v. Manufacturers Hanover Trust Co.,* 68 N.Y.2d 172, 177[, 507 N.Y.S.2d 610, 499 N.E.2d 864]; *Teichner v. W & J Holsteins,* 64 N.Y.2d 977, 979[, 489 N.Y.S.2d 36, 478 N.E.2d 177]; *Demov, Morris, Levin & Shein v. Glantz, supra; Crowley v. Wolf,* 281 N.Y. 59, 64–65[, 22 N.E.2d 234]; *Martin v. Camp,* 219 N.Y. 170, 176[, 114 N.E. 46]). Where that discharge is without cause, the attorney is limited to recovering in *quantum meruit* the reasonable value of the services rendered. (*Teichner v. W & J Holsteins, supra; Demov, Morris, Levin & Shein v. Glantz,* 53 N.Y.2d, at 557[, 444 N.Y.S.2d 55, 428 N.E.2d 387], *supra*). Where the discharge is for cause, the attorney has no right to compensation or a retaining lien, notwithstanding a specific retainer agreement. (*Teichner v. W & J Holsteins,* 64 N.Y.2d, at 979[, 489 N.Y.S.2d 36, 478 N.E.2d 177], *supra; Crowley v. Wolf,* 281 N.Y., at 65[, 22 N.E.2d 234], *supra*). "Th[is] rule is well calculated to promote public confidence in the members of an honorable profession whose relation to their clients is personal and confidential." (*Martin v. Camp,* 219 N.Y., at 176[, 114 N.E. 46], *supra*).

We view the public policy considerations that underpin this rule as both relevant and sufficiently compelling to warrant denying unearned attorney's fees, or credit for the monetary equivalent, to an attorney who is guilty of legal malpractice that results in the client's loss of recovery upon a valid claim. The attorney's malpractice constitutes a failure to honor faithfully the fidelity owed to the client and to discharge competently the responsibilities flowing from the engagement. It is especially appropriate to deny credit for a fee where, as here, the defendant attorneys performed absolutely no services in connection with the disputed claim. . . .

*Campagnola v. Mulholland,* 76 N.Y.2d 38, 43–44, 556 N.Y.S.2d 239, 555 N.E.2d 611, 613–14 (N.Y.1990). This analysis is more consistent with Wyoming precedent, for we have previously recognized that the unique nature of the attorney-client relationship justifies divergence from typical contract rules. In *Enos v. Keating,* 39 Wyo. 217, 236, 237, 271 P. 6, 12, 13 (1928), for example, we recognized that a client may discharge an attorney at any time without cause, and while the attorney cannot sue for breach of contract, he can recover in *quantum meruit. See also Morfeld v. Andrews,* 579 P.2d 426, 432 (Wyo.1978) ("[N]otwithstanding that Andrews could not claim under the contingent-fee contract he still has a right to recover upon *quantum meruit.*").

[¶ 40] In addition to *Moores,* the majority relies upon three other cases from different jurisdictions allowing the deduction. All are problematic. *Childs,* 69 A.D. 160, 74 N.Y.S. 643, was a 1902 New York appellate division decision that has been specifically rejected in two more recent New York appellate decisions. *See Andrews v. Cain,* 62 A.D.2d 612, 613, 406 N.Y.S.2d 168, 169 (N.Y.App.Div. 1978); *Campagnola v. Mulholland, Minion & Roe,* 148 A.D.2d 155, 158, 543 N.Y.S.2d 516, 518 (N.Y.App.Div.1989), *aff'd,* 76 N.Y.2d 38, 556 N.Y.S.2d 239, 555 N.E.2d 611 (N.Y. 1990).

[¶ 41] *Sitton,* 385 F.2d 869, is a 1967 Sixth Circuit decision applying Tennessee law. The *Sitton* court did not directly address the deductibility issue, but only referenced a jury instruction allowing the deduction based upon the terms of the contract. In 1985, the Tennessee Supreme Court directly addressed deductibility of contingent fees in a legal malpractice action, and rejected the deduction:

In determining whether or not a malpractice award should be reduced by the fee which the attorney would have received had he competently handled the litigation, we are faced with two opposing lines of decision. Those cases allowing the reduction hold, generally, that the client should recover only what he would have received had the original matter been properly handled. Since the client would have had to pay the attorney his fee, that fee is deducted from the malpractice award. *See, e.g., Childs v. Comstock,* 69 App. Div. 160, 74 N.Y.S. 643, 649 (1902); *McGlone v. Lacey,*

288 F.Supp. 662, 665 (D.S.D.1968). There is some support for this view in Tennessee. *See In re Woods,* 158 Tenn. 383, 13 S.W.2d 800, 803 (1929); *Sitton v. Clements,* 257 F.Supp. 63, 65 (E.D.Tenn.1966), *aff'd* 385 F.2d 869 (6th Cir.1967).

The contrary line of decision, which appears to be the majority view, holds that no credit is due the attorney since he has breached the contract by performing negligently, and since deduction of his fee would not fully compensate the client who has incurred additional legal fees in pursuing the malpractice action. These additional fees are said to cancel out any fees which the plaintiff would have owed the attorney had he performed competently. *See, e.g., Christy v. Saliterman,* 288 Minn. 144, 179 N.W.2d 288, 307 (1970); *Andrews v. Cain,* 62 App. Div.2d 612, 406 N.Y.S.2d 168, 169 (1978); *Kane, Kane & Kritzer, Inc. v. Altagen,* 107 Cal.App.3d 36, 43, 165 Cal.Rptr. 534, 538 (1980).

On the facts of this case, we hold that Mr. Duggin should be denied any credit for the legal fees which he originally was to receive. It is the negligent attorney who is at fault for breaching the contract, and the burden of his incompetence should not be placed upon the innocent client. While in an appropriate case the attorney may be entitled to credit for expenses which were incurred on behalf of the client and which ultimately benefitted the client, the record here is silent as to any benefit incurring to the plaintiffs from the actions of Mr. Duggin. To the contrary, the plaintiffs have had to incur additional legal fees to pursue this malpractice action, and they should not be required to assume the burden of twice paying for legal representation. By taking into account the legal fees which plaintiffs have incurred in pursuing this malpractice action we are not, as Mr. Duggin argues, awarding the plaintiffs their attorney fees. The additional fees necessary to pursue this action are in the nature of incidental damages flowing from Mr. Duggin's breach of the contract. *See*

*Winter v. Brown,* 365 A.2d 381, 386 (D.C.App.1976).

*Foster v. Duggin,* 695 S.W.2d 526, 527 (Tenn. 1985).

[¶ 42] *McGlone,* 288 F.Supp. 662, is a decision from the federal district court in South Dakota granting summary judgment to the defendant attorney because plaintiff failed to establish the existence of the attorney-client relationship. In dicta, the court recognized deductibility based solely upon *Sitton.* Because *Sitton* has been rejected, *McGlone* retains little persuasive value.

[¶ 43] Most courts that have considered the issue have denied the deduction under the specific facts presented, but leave open the possibility that the deduction should be allowed on a *quantum meruit* basis.[2] As indicated previously, *Moores* is, in essence a *quantum meruit* case. The $90,000 settlement offer was directly attributable to the efforts of the attorney. The deduction was allowed in the full amount of the 1/3 fee percentage specified in the agreement because the attorney had earned the fee. The sole justification provided by the majority for rejecting a *quantum meruit* approach to determine an appropriate deduction is that it would be "complicated." While complicated factual issues are conceivable, no factual complications exist in many cases. The *Moores* court had no difficulty allowing the deduction because it had been earned. Where the attorney has not performed any work that has benefited the client, such as missing a statute of limitations deadline, the courts do not have any difficulty rejecting the deduction. The mere possibility of complicated factual scenarios in some cases provides no justification for allowing the deduction in its entirety in all cases.

[¶ 44] While as a general rule courts do not allow the deduction, most allow for the possibility that, in the appropriate case, a deduction is warranted. As one court explained:

---

**2.** The exception appears to be *Carbone v. Tierney,* 151 N.H. 521, 864 A.2d 308, 319–20 (2004), where the New Hampshire Supreme Court specifically rejected the *quantum meruit* approach in favor of a rule of law that would not allow the contingent fee deduction in any legal malpractice case regardless of the work performed by the attorney or the benefit received by the client.

In *Foster v. Duggin* (1985), Tenn., 695 S.W.2d 526, the court denied a deduction for attorney's fees where the defendant attorney had failed to file the plaintiffs' claim prior to expiration of the statute of limitations. However, the court limited its holding to "the facts of this case." *Id.* at 527. The court ruled that while in an appropriate case the attorney may be entitled to credit for fees incurred on behalf of the client and which ultimately benefited the client, the record in that case was silent as to any benefit incurring to the plaintiffs from the actions of the attorney. *Id.*

Also, in *Strauss v. Fost* (1986), N.J.Super.A.D., 213 N.J.Super. 239, 517 A.2d 143, the court declined to establish a "hard and fast rule" that in no case can a negligent attorney be entitled to any portion of his legal fees. *Id.* at 145. "We can envision cases where on a *quantum meruit* basis the efforts of a defendant attorney may have so benefited a plaintiff or other circumstances exist that it would be unfair to deny all or part of the offset." *Id.* The court thus set forth a general rule that a negligent attorney is precluded from recovering his attorney's fees but held that courts should determine on a case-by-case basis whether to apply the general rule or relax the rule and permit deduction for attorney's fees where the interests of justice so dictate. *Id. See also Campagnola v. Mulholland* (1990), 76 N.Y.2d 38, 555 N.E.2d 611, 556 N.Y.S.2d 239 (ruling it "especially appropriate to deny credit for a fee where, as here, the defendant attorneys performed absolutely no services in connection with the disputed claim ..." and that "in these circumstances" the attorney was precluded from claiming credit for an unearned fee). *Cf. Moores v. Greenberg*, 834 F.2d 1105 (1st Cir.1987) (allowing deduction for attorney's fees where counsel's efforts produced the rejected settlement offer upon which the legal malpractice action was based).

**3.** As Justice Kaye noted in *Campagnola:*
Should the application of this rule yield an absurd result in a future case presenting different facts ... lawyer defendants can be trusted

*Schultheis v. Franke*, 658 N.E.2d 932, 940 (Ind.Ct.App.1995).

[¶ 45] In the final analysis, it does not appear that any court currently applies the rule adopted by the majority. I find the modern view regarding deductibility appropriate and the reasoning supporting that view persuasive. We should adopt the general rule that the contingent fee should not be deducted. However, in those cases where it would be inequitable to disallow the deduction, as exemplified by *Moores*, a *quantum meruit* approach would be more appropriate.[3] In the instant case, however, the certified question does not include any facts indicating that Mr. Wooster benefited in any fashion from Mr. Horn's efforts. Accordingly, I would answer "No" to the first certified question.

to bring such additional facts to courts' attention, and the law can be trusted to respond sensibly in calculating and awarding damages. 555 N.E.2d at 616 (Kaye, J., concurring).